UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

YUSUKE BANNO, et al.,

                        Plaintiffs,

    -versus-                                      06 CV 2270 (KMK)(JCF)

THE CITY OF NEW YORK, et al.

                       Defendants.

------------------------------------------------------------------- x

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR OBJECTIONS, PURSUANT TO FED. R. CIV. P. 72, TO ORDERS OF MAGISTRATE JUDGE JAMES C. FRANCIS IV COMPELLING THE DEPOSITION OF AN UNDERCOVER OFFICER WITHOUT PROTECTING THE IDENTITY OF THAT OFFICER

                                                    MICHAEL A. CARDOZO
                             Corporation Counsel of the City of New York
                                       *Attorneys For Defendants*

                                                       James Mirro (JM 2265)
                             Special Assistant Corporation Counsel
                                         Special Federal Litigation
                                        100 Church Street, Room 3-130
                                            New York, New York 10007
                                                  212.788.8026 (ph)
                                                   212.788.9776 (fax)

**AUGUST 21, 2007**

# TABLE OF CONTENTS

Background .................................................................................................. 2

    Magistrate Francis' Orders ................................................................. 3

Argument ..................................................................................................... 5

    The Magistrate's Orders Should Be Reversed ............................... 5

    Standard of Review ........................................................................... 5

    I.    The Magistrate's Orders Are Clearly Erroneous
        And Contrary To Law Because They Fail To Protect
        The Identity Of Undercover Badge 6216 ........................... 5

        A.  The Legal Authorities Support Non-Disclosure
            Of The Undercover's Identity ..................................... 6

        B.  The Facts Support Non-Disclosure
            Of the Undercover's Identity ..................................... 7

        C.  Common Sense And Deference To The NYPD's Expertise
            Support Non-Disclosure Of The Undercover's Identity ..... 10

        D.  Defendants' Concerns About Disclosures To Plaintiffs'
            Counsel Are Far From Speculative ............................ 12

        E.  Plaintiff Has Asserted No Legitimate Need For The
            Undisguised Physical Appearance Of Badge 6216 ............ 14

Conclusion ................................................................................................... 17

## BACKGROUND

This is one of the consolidated actions arising out of arrests around the time of the Republican National Convention. On August 29, 2004, a group of individuals including plaintiff Yusuke Banno was arrested for lighting fire to a large parade float as it passed Madison Square Garden in Manhattan (the site of the Republican National Convention). The group had marched behind a red and black banner identifying them as anarchists. Many wore masks to conceal their identities. NYPD videotapes and still photos produced in this case depict the parade float bursting into flames after it was apparently doused with a liquid accelerant.

The videos show that the densely packed crowd of thousands of otherwise peaceful protesters ran in all directions to avoid the flames. As NYPD officers attempted to apprehend the individuals responsible, certain individuals actively resisted the officers' efforts by physically preventing arrests and by throwing smoke bombs at the officers. Several officers sustained injuries. Detective John Park, who arrested plaintiff, was burned while struggling to bring him into custody. Undercover Badge 6216 was a witness to the fire and later identified Mr. Banno as an individual responsible for the fire.

Based on these events, the District Attorney charged Mr. Banno with Assault in the First Degree, Assault on a Police Officer, Reckless Endangerment in the First Degree, Hindering Prosecution in the Second Degree, Riot in the First Degree, Resisting Arrest and Obstruction of Government Administration in the Second Degree (Exhibit "A" hereto).[1] The charges were dismissed on motion of the DA shortly before trial. In his Complaint, brought pursuant to 42 U.S.C. § 1983, Mr. Banno has sued the City of New York and three police officers. They are Detective John Park; retired Officer Orlando Rivera, who processed Mr.

---

[1] All exhibits referenced in this brief are appended to the attached Declaration of James Mirro.

Banno's arrest; and Undercover Badge 6216. Mr. Banno alleges false arrest, malicious prosecution and violation of his First Amendment rights.

Plaintiff now seeks the deposition of Badge 6216. Contrary to the bitter, and completely unfounded, complaints of plaintiff's counsel in recent correspondence to the Your Honor, plaintiff's counsel already has deposed a number of other NYPD officers in this action (defendants have not yet deposed Mr. Banno). To date, defendants have produced Detective John Park (deposed on May 3, 2007), Officer Deborah Sangare (deposed on May 8, 2007), Retired Officer Orlando Rivera (deposed on May 10, 2007) and Detective Michael Cummings (deposed on July 19, 2007). Numerous other officers have been made available for deposition in the RNC cases; and defendants continue to make still other officers available for deposition in the RNC cases at a pace of approximately five officers per day under a schedule set by Magistrate Judge Francis that runs through mid-November.[2]

### **Magistrate Francis' Orders**

Defendants have agreed to produce U/C 6216 for deposition, but have consistently maintained that he should be produced for deposition only under circumstances that assure the nondisclosure of his identity.[3] Thus, defendants asked Magistrate Francis to permit

---

[2] Mr. Fogel complains in recent correspondence to the Court about U/C 6216's failure to appear for deposition on the day that his father underwent emergency triple bypass surgery and he was required to accompany his mother to the operating room. Such crass insensitivity has been a hallmark of plaintiff's counsel in this litigation (*see, e.g.*, Letter from James Mirro to Jeffrey Fogel, dated July 18, 2007, Exhibit "B" hereto). Magistrate Francis has rejected that and a host of other complaints by plaintiff's counsel. See, e.g., Order of Magistrate Francis dated June 20, 2007 (rejecting the overwhelming majority of plaintiff's arguments). *For the Court's convenience, all pertinent correspondence from defendants is attached hereto, in chronological order, as Exhibit "B."*

[3] No plaintiff in the consolidated RNC cases has ever formally noticed the deposition of U/C 6216. U/C 6216 is being produced solely pursuant to an agreement that defendants reached with Mr. Fogel. That agreement calls for his identity to be concealed during the deposition (*see* Letter from James Mirro to Jeffrey Fogel, dated July 9, 2007, Exhibit "B" hereto). Although defendants will not object to Mr. Moore's participation in that deposition, defendants emphasize that his office has never noticed the deposition of U/C 6216. For this reason, defendants submit that the Court should not consider his anticipated arguments on this appeal.

3

this officer "to use a screen to maintain his anonymity" while giving his deposition testimony. (*see* Letter from James Mirro to Magistrate Francis, dated July 12, 2007 at 1, ¶ 2, Exhibit "B" hereto). Plaintiff objected to that request and, on July 13, 2007, Magistrate Francis ordered that "The undercover need not reveal his identity, but he shall otherwise be deposed in the normal manner, without a screen or disguise" (Order of July 13, 2007, Exhibit "C" hereto).

In light of Magistrate Francis' order, and after further communication with the NYPD, defendants sought reconsideration. On July 27, 2007, defendants asked Magistrate Francis at least to permit U/C 6216 to use a wig and mustache while giving his deposition testimony (*see* Letter from James Mirro to Magistrate Francis, dated July 27, 2007 at 2, ¶ 3, Exhibit "B" hereto). Defendants argued that "this minimal disguise, which is no more than any individual might grow naturally, still would permit the witness sufficient anonymity to provide some comfort to him and to the Intelligence Division. At the same time, defendants submit that it addresses Mr. Fogel's concerns by permitting him to see the witness during the examination." Id. Plaintiff objected to this modest proposal and, on July 31, 2007, Magistrate Francis declared that "The order that U/C 6216 appear for deposition without disguise is reaffirmed. Defendants' suggestion that plaintiffs' counsel might encounter the witness subsequently and, if they did, might reveal his identity, is sheer speculation" (Order of July 31, 2007, Exhibit "C" hereto).[4]

---

[4] In a series of negotiations with plaintiff, and in letters to plaintiff and to Magistrate Francis, defendants have expressed three primary concerns with producing U/C 6216 for deposition without adequate protection against the disclosure of his identity. First, disclosure of the identity or appearance of U/C 6216 "would jeopardize the NYPD's undercover operations in which 6216 is currently involved." Letter from James Mirro to Magistrate Francis dated July 12, 2007 at 1, ¶ 2, 3, ¶ 2 (Exhibit "B" hereto). Second, "if the service of this anonymous officer were lost due to the disclosure of his appearance or identity, it would constitute a substantial loss to the NYPD's undercover program due to the very significant time, money and other resources invested in his training." Id. Third, disclosure of U/C 6216's appearance or identity would "jeopardize both his and his family's personal safety as well as his career as an undercover officer within the NYPD." Id.

4

## ARGUMENT

### The Magistrate's Orders Should Be Reversed

### Standard Of Review

Rule 72 of the Federal Rules of Civil Procedure provides the governing standard of review applicable to this appeal. Rule 72 provides that, as to *non-dispositive* matters, "[t]he district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." Rule 72(a). "Matters concerning discovery generally are considered 'nondispositive' of the litigation." Thomas E. Hoar, Inc. v. Sara Lee Corporation, 900 F.2d 522, 525 (2d Cir. 1990). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" MacWade v. Kelly, 230 F.R.D. 379, 381 (S.D.N.Y. 2005), *quoting* United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." Tribune Co. v. Purcigliotti, 1998 WL 175933, * 1 (S.D.N.Y. 1998) (Preska, J.).

### I.

### The Magistrate's Orders Are Clearly Erroneous And Contrary To Law Because They Fail To Protect The Identity Of Undercover Badge 6216

In his first order, the Magistrate properly articulated the law insofar as he ordered that "The undercover need not reveal his identity." Unfortunately, the remainder of the order thoroughly gutted that protection. By ordering U/C 6216 to be "deposed in the normal manner, without a screen or disguise," the Magistrate assured that the identity of the undercover officer would be disclosed, through his physical appearance, to plaintiffs' counsel. Magistrate Francis' subsequent refusal to permit even a slight disguise, in the form of a wig and mustache, further assured disclosure of the undercover's identity.

5

### A.

### The Legal Authorities Support Non-Disclosure Of The Undercover's Identity

These orders run directly contrary to a long line of cases in the Second Circuit that emphasize the importance of protecting certain core law enforcement interests. Among others, those core interests are "to preserve the confidentiality of sources, to protect witness[es] and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." In re Dep't of Investigation of the City of New York v. Myerson, 856 F.2d 481, 484 (2d Cir. 1988) (holding that subpoenaed documents were covered by law enforcement privilege); MacWade v. Kelly, 230 F.R.D. 379, 381-83 (S.D.N.Y. 2005) (Berman, J.) (refusing to permit disclosure of documents covered by law enforcement privilege); Morrissey v. The City of New York, et al., 171 F.R.D. 85, 90, 92 (S.D.N.Y. 1997) (Motley, J.) (recognizing that law enforcement privilege covers information the disclosure of which would constitute a "threat to [officers'] safety," would interfere with an investigation or would "weaken[] law enforcement programs or procedures"). The privilege protects ongoing investigations as well as future investigations. Morrissey, 171 F.R.D. at 90.

The Courts routinely have protected the identity of undercover officers and other third parties who furnish information to facilitate law enforcement, particularly when those parties have expressed safety concerns. See, e.g., United States v. Orena, 883 F. Supp. 849, 868 (E.D.N.Y. 1995) (Korman, J.) (refusing to enforce subpoenas "to the extent compliance would reveal the names or addresses of law enforcement officers [or] identify undercover surveillance vehicles"); United States v. Rodriguez, 1990 WL 41761, *1 (S.D.N.Y. 1990) (Stanton, J.) ("identification of confidential informants and undercover agents are denied"); Peck v. United States, 522 F. Supp. 245, 246 (S.D.N.Y. 1981) (Stewart, J.) (holding in civil action that privilege

6

protected the identities of undercover officers, informants and third parties); Newell v. The City of New York, 2003 WL 21361737, *3 (S.D.N.Y. 2003) (holding in civil case that "the burden is on the movant to demonstrate the need for the extraordinary remedy of disclosure" and that plaintiff was not entitled to depose confidential informant ); Holman v. Cayce, 873 F.2d 944 (6th Cir. 1989) (refusing in civil action to permit disclosure of the identity of confidential informant); Bigelow v. District of Columbia, 119 F.R.D. 300, 301 (D.D.C. 1988) ("In the context of criminal law, 'it has been consistently held that an informant's identity need not be disclosed unless 'essential to the defense.'. . . It would seem that this axiom is no less true in a civil proceeding wherein property interests rather than liberty interests are at stake").

**B.**

**The Facts Support Non-Disclosure Of The Undercover's Identity**

The Court should reach the same conclusion here because the law enforcement privilege protects the identity and physical appearance of U/C 6216. In their letters to the Magistrate, defendants succinctly have articulated the law enforcement interests at stake (*see* Exhibit "B" hereto). Defendants have articulated those same interests, and have explained the importance of protecting them, in several affidavits submitted to the Magistrate in the consolidated RNC cases. Those affidavits set forth in detail the importance of protecting the identity of undercover officers. *See* Declaration of Chief Thomas Graham dated February 23, 2007 ("Graham Dec.") at ¶¶ 10-11 (Exhibit "D" hereto); and Declaration of Deputy Commissioner David Cohen dated June 6, 2007 ("Cohen June Dec.") at ¶¶ 9-13 (Exhibit "A" attached to Exhibit "F" hereto). Out of an abundance of caution, we submit with this memorandum additional testimony of Commissioner Cohen concerning U/C 6216. *See* Declaration of Deputy Commissioner David Cohen dated August 21, 2007 ("Cohen Aug Dec.") at ¶¶ 3-12 (Exhibit "F" hereto).

7

According to Chief Graham, "Information regarding the identities of undercover officers is highly sensitive and is information that the NYPD takes great measures to protect. . . . The identities of undercover officers cannot be revealed because, once known, undercover officers will no longer be able to effectively conduct their duties in an anonymous capacity of detecting criminal activity and apprehending criminals." Graham Dec. at ¶ 10. In addition, disclosure "poses a significant safety risk to that officer." Id. Commissioner Cohen has testified that "The greatest vulnerability the NYPD intelligence program faces is the release of information that would reveal or tend to reveal the identity of its sources." Cohen June Dec. at ¶ 10. "The inappropriate sharing of such information would simply endanger the lives and safety of the people who are identified either as undercover personnel or confidential informants." Id.

"Reflecting the damage that would occur to our information gathering abilities . . . we have gone to great lengths to protect identity information." Id. at ¶ 11. "With respect to our Intelligence Division undercover personnel . . . their identities are without exception the most protected personnel information in the NYPD[.]" Id. "The accidental or intended release of strands of information that could reveal the identity of any one of these persons – whether active or inactive – would cause irreparable harm to our ability to recruit members of the service into this sensitive aspect of our law enforcement mission." Id.

With respect to Badge 6216, in particular, Commissioner Cohen has emphasized that "Badge 6216 is currently involved in investigative activities that require his continued anonymity. Were his identity to be revealed, Badge 6216 could no longer be employed in the role he currently plays. The loss of Badge 6216's services would adversely affect the investigative activity in which he is currently participating." Cohen Aug Dec. at ¶ 4. "The disclosure of the identity of Badge 6216 would constitute a substantial loss to the NYPD's

undercover program" and "jeopardizes both the undercover officer's and his family's personal safety." Id. at ¶¶ 5-6.

From an intelligence perspective, moreover, disclosure of the physical appearance of U/C 6216 is equivalent to the disclosure of that officer's identity. "Were Badge 6216 to sit for examination, which I am advised may continue for several hours in the presence of several attorneys for plaintiffs, substantially all of the visual information about Badge 6216's physical appearance would have been disclosed to those attorneys unless a screen or an appropriate disguise is employed." Id. at ¶ 7. "From an intelligence perspective, disclosure of an undercover officer's undisguised appearance to anyone outside the department is considered a serious compromise of that officer's ability to function in an undercover capacity. Therefore, disclosure of Badge 6216's physical appearance to several plaintiffs' counsel in the course of a deposition will be considered disclosure of his physical appearance to the general public." Id. at ¶ 8.

"As stated in the Law Department's July 27, 2007 letter to Judge Francis requesting that Badge 6216 be permitted to appear at his deposition in a disguise of a wig and mustache, from the Intelligence Division's standpoint an appropriate disguise is necessary to preserve NYPD's ability to use him as an undercover in the future. For this deposition, in light of the other protections afforded in Judge Francis's order, a wig and mustache are the minimal acceptable disguise that I, as an intelligence professional, believe is necessary for preserving Badge 6216's ability to function as an undercover." Id. at ¶ 9. "For all of these reasons, and for the reasons set forth in more detail in my June 6 Declaration, the Intelligence Division firmly

advocates that the Court permit Badge 6216 to give his deposition testimony in this case in a disguise that permits him to avoid the disclosure of his physical appearance." Id. at ¶¶ 10-12.[5]

C.

### Common Sense And Deference To The NYPD's Expertise Support Non-Disclosure Of The Undercover's Identity

With or without the testimony of the Commissioner of the NYPD's Intelligence Division, defendants respectfully submit that common sense dictates the same result. If the law provides that the identity of an undercover officer is protected by the law enforcement privilege, then surely that officer's physical appearance similarly must be protected.

In any event, in circumstances such as these, the Supreme Court and the Second Circuit have instructed that the Courts are to give great deference to the expertise of the Commissioner. In MacWade v. Kelly, 460 F.3d 260, 273-74 (2nd Cir. 2006), the Court's holding could not have been clearer. In that case, in which the Second Circuit upheld the NYPD's program of searching certain bags and packages carried on the subways, the Court held that "In considering the 'degree to which the seizure advances the public interest,' we must remember not to wrest 'from politically accountable officials . . . the decision as to which among reasonable alternative law enforcement techniques should be employed to deal with a serious danger.'" 460 F.3d at 273, quoting Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 453-54 (1990). "That decision is best left to those with "a unique understanding of, and responsibility for, limited public resources, including a finite number of police officers." Id. Unlike the approach taken by the Magistrate here, in MacWade the Second Circuit held that "We will not peruse, parse or extrapolate four months' worth of data in an attempt to divine how many checkpoints the City

---

[5] According to Commissioner Cohen, "[t]he action directed by the Magistrate's orders concerning Badge 6216 directly undercuts the department's efforts to protect the identity of Badge 6216, to retain him within the undercover Continued...

10

ought to deploy in the exercise of its day-to-day police power. Counter-terrorism experts and politically accountable officials have undertaken the delicate and esoteric task of deciding how best to marshal their available resources in light of the conditions prevailing on any given day. We will not – and may not – second guess the minutiae of their considered decisions." Id., *citing* Sitz, 496 U.S. at 453.

In this case, rather than to accord any deference to the expertise of the NYPD's Intelligence Division in the law enforcement and intelligence gathering arena, the Magistrate has substituted his own judgment. He has done so simply by characterizing as "speculative" the Commissioner's carefully considered assessment concerning the risks to Badge 6216, to his family, to his career, to the department and to the City. Defendants emphasize that the Commissioner's judgments on these issues have been informed by 41 years of experience in the intelligence community. Those carefully honed judgments, however, have been dismissed by the Magistrate *without* citation to any case law (or even any recitation that any case law was considered) and *without* providing any reasoning. Defendants note that, as a practical matter, if the Magistrate's assessment of these risks turns out to be wrong, the price to be paid will be paid first by the officer himself and his family, then by the NYPD and the City of New York; and that price will be high. In any event, defendants submit that the Magistrate's dismissal of the Commissioner's risk assessment as "speculative" runs directly contrary to the holdings of Sitz and MacWade, which require deference to the Commissioner. The Magistrate's orders, therefore, are clearly erroneous and contrary to law.

The Magistrate's orders are also contrary to two other orders issued by the Magistrate himself on the same issue in these consolidated RNC cases. In memorandum

---

program, and to attract other qualified officers to that program." Cohen Aug Dec. at ¶ 10.

11

opinions issued by the Magistrate in <u>Macnamara</u> and in <u>Schiller</u>, dated April 20, 2007 and August 6, 2007 respectively, the Magistrate repeatedly acknowledged that the law enforcement privilege protects the identities of undercover officers (*see* Exhibits "G" and "H"). In his Order of April 20, the Magistrate recognized that "If the City determines that disclosure of an officer's identity to plaintiffs' counsel would pose a significant safety risk to the officer or would jeopardize an ongoing investigation, the City may seek appropriate relief, such as an order permitting the City to identify the officer by shield number or pseudonym." Order of April 20, 2007 at 23. Throughout his Order of August 6, the Magistrate acknowledged the defendants' right to shield *both* the identity of undercover officers *and* information that could be used to determine the identity of those officers.[6] In contrast, in this case the Magistrate has issued orders *requiring* Badge 6216 to reveal his physical appearance, which is tantamount to revealing his identity and puts at risk both his safety and his career as an undercover officer.

**D.**

**Defendants' Concerns About Disclosures
To Plaintiffs' Counsel Are Far From Speculative**

Contrary to the Magistrate's opinion, defendants' concerns about disclosures to plaintiffs' counsel are far from speculative. In their own letters to the Magistrate on these issues, plaintiffs' counsel have refused to assure defendants or the Court that they will respect the

---

[6] "The issue, therefore, is whether it is feasible to redact the field intelligence reports so as to permit the plaintiffs to review them without revealing the identities of undercover officers . . . ." (at page 9); quoting <u>Vodak v. City of Chicago</u>, 2004 WL 2032147, *5 (N.D. Ill. 2004) as "permitting redaction of 'names of all undercover intelligence officers as well as any identifying information' contained in disputed documents" (at 9 n.8); "I have also redacted a limited amount of information related to plans for the RNC where it is evident that disclosure of that information could lead to the identification of an undercover officer." (at 14); supporting certain redactions on the ground that "Disclosure of the names contained in the field intelligence reports would make it easier to determine the identities of undercover officers or informants." (at 16-17 n.16); "Much of the redacted information is privileged. For example, the City has redacted . . . identifying information regarding undercover officers." (at 17); and "For example, the City might [demonstrate grounds for the law enforcement privilege by showing] that disclosure of the information would . . . reveal the identity of the undercover." (at 19).

12

confidentiality of U/C 6216's physical appearance either during or after his deposition. In his letter of July 9, 2007, Mr. Fogel states only that "I am prepared to maintain, *at least for now*, the confidentiality of the officer's appearance." Plaintiff's Letter at 2, ¶ 2.[7] In his letter of July 11, 2007, Mr. Moore (who has never even noticed the deposition of U/C 6216) has insisted, without citing any legal authority, that defendants produce Badge 6216 "without any disguise *and* be ordered to divulge his full name." Mr. Moore has offered only "to keep this deposition transcript confidential until such times as its use is required in response to a motion or at trial." Moore Letter at 2, ¶ 2. Both letters are attached as Exhibit "I" hereto.

Even absent these expressed views of plaintiffs' counsel, defendants' concerns about improper disclosures in these cases hardly could be described as speculative. Defendants note that plaintiffs' counsel in this and the related RNC actions are active criminal defense lawyers. They are also actively involved in civil actions against the City arising from the NYPD's law enforcement activities both before and after the RNC. Mr. Fogel, who was previously with the NYCLU, Mr. Moore and other RNC plaintiffs' counsel, have a long history of litigating such actions on behalf of plaintiffs. If, after they spend the day examining him at the deposition, one of them were to cross paths with U/C 6216, at the courthouse or elsewhere, and unintentionally reveal his identity, all of the public's legitimate interests in the protection of the identity of this undercover officer (as articulated in Commissioner Cohen's declarations) would have been defeated. Defendants underscore that these legitimate public interests – to say nothing

---

[7] To his credit, in his subsequent letter of July 13, 2007, Mr. Fogel represented that defendants "can designate this deposition as confidential . . . and I would consider 6216's appearance to be covered by such a designation." Unfortunately, as defendants have seen repeatedly in the RNC litigation, such confidentiality designations routinely have been challenged and litigated by plaintiffs' counsel; and the Magistrate has set a very high, if not impossible, standard for enforcing such designations. Accordingly, defendants can take little comfort in such designations.

of the very considerable personal interests of the officer and his family – should not be put at such risk.[8]

As Commissioner Cohen has testified, moreover, there are members of the public who have made and continue to make concerted efforts to publicly reveal the identities of officers such as U/C 6216. *See* Cohen June Dec. at ¶¶ 24-30. "'Marking Law Enforcement' was the name given to a tactic posted on the internet . . . which advocated the identification of suspected law enforcement officers and uploading [that information] to the internet." Id. at ¶ 24. "Regarding release of our most sensitive [information], we know that organizations and individuals that have considered operations against New York City, including terrorist operations, carefully watch what we do and what we say." Id. at ¶ 25.

Defendants emphasize that it is the formal duty of the Commissioner to make judgments about intelligence information and law enforcement issues such as these and, with his experience of 41 years, to assess the pertinent risks. The Magistrate's orders, which substitute his own judgment in the place of the Commissioner's, therefore are clearly erroneous and contrary to law.

E.

**Plaintiff Has Asserted No Legitimate Need For
The Undisguised Physical Appearance Of Badge 6216**

"[I]n determining whether privileged [information] should be disclosed, courts must carefully weigh defendants' interest in non-disclosure 'against [plaintiffs'] need for information.'" MacWade, 230 F.R.D. at 382-83 ("given the sensitive nature of the [information]

---

[8] As the Court no doubt recalls, the City's confidential documents were disclosed in the RNC cases notwithstanding the Court's clear prohibition against such disclosure. It proved impossible to determine the source of the leak and the episode left the City with little expectation that it could count on confidentiality even when it has been ordered by the Court.

sought and plaintiffs' unproven need for the information, the Court grants the defendants' motion to shield the . . . information at this time"). In Morrissey, for instance, the Court held that "In this case . . . there is nothing to balance: plaintiff's need for this information is virtually nonexistent; it has almost nothing to do with his case. Defendants, however, have demonstrated that this information, were it publicly available, would seriously compromise future law enforcement investigations." Morrissey, 171 F.R.D. at 91 (refusing to permit disclosure of law enforcement privileged information).

In this case, as in MacWade and Morrissey, plaintiff has made no showing of any need, much less a substantial need, to see the undisguised physical appearance of Badge 6216 for purposes of the pre-trial deposition in this civil action. In his letter of July 9, 2007, Mr. Fogel argued that he wanted to be able to see the witness at his deposition in order to assess his credibility. "I request that an order be entered that he be deposed . . . in a manner that counsel can clearly see him and his face." Plaintiff's Letter of July 9, 2007 at 2, ¶2 (Exhibit "I" hereto). Mr. Fogel emphasized that he was chiefly concerned with "the inability to see the deponent." Id. at 1, ¶2. Mr. Fogel added that he wanted "to look at him, his facial posture and gestures as well as his body movements." Id. at ¶3.

With plaintiffs' concerns in mind, defendants then offered to produce U/C 6216 *without* a screen and *without* sunglasses (although plaintiffs never objected to sunglasses during the deposition of another undercover officer in this action), but *with* a wig and mustache (*see* Letters of James Mirro, dated July 9, July 12 and July 27, 2007, Exhibit "B" hereto).[9]

---

[9] Badge 6216 is the second undercover officer called to testify at deposition in this action. With the consent of plaintiffs' counsel (including Beldock Levine), that undercover officer was produced for his deposition in a disguise that included a wig, mustache and sunglasses. At the inception of that deposition, I asked that there be no videotaping, photography or audio taping of that deposition. None of the plaintiffs' counsel who were present (including Jeffrey Fogel, Rachel Kleinman and Jason Rozger) objected to that procedure. The deposition proceeded until it was concluded at nearly 5 p.m.

Defendants argued that this minimal disguise, which is no more than any individual might grow naturally, still would permit the witness sufficient anonymity to provide some comfort to him and to the Intelligence Division (*see* Letter of James Mirro to Magistrate Francis dated July 27, 2007). At the same time, defendants argued that it addressed Mr. Fogel's concerns by permitting him to see the witness during the examination. Id.

In response, Mr. Fogel then insisted that he was entitled to have the witness appear at the deposition just as we would produce him before a jury. Id. Defendants argued that no witness at deposition ever makes an assurance that he will appear at trial just as he has appeared at deposition, that this witness may not be required to testify at trial, and in any event that plaintiff offered no reason why the officer must appear at deposition just as he might appear at trial. Id. In addition, we noted that, if U/C 6216 were required to testify at trial in this civil action, we would again request that he be permitted to do so with a disguise to preserve the ability of the NYPD to use him as an undercover in the future. Id.

Plaintiff has offered no other reason for his demand that Badge 6216 appear without a disguise. Defendants submit that, on this record, plaintiff has shown no need, much less the "substantial" need required by law, to overcome the law enforcement privilege. Defendants remind the Court that, at the time of the deposition of another undercover officer in this action, plaintiff had no objection to an even greater disguise than we have proposed for Badge 6216. Plaintiff took that undercover officer's deposition while he wore sunglasses, a wig and mustache, without objection from any of the three plaintiffs' counsel who attended that deposition (*see* Letter of James Mirro to Magistrate Francis dated July 27, 2007, Exhibit "B" hereto).

Defendants also emphasize that this is not a criminal action in which the criminal defendant has a right, under the Confrontation Clause of the U.S. Constitution, to confront his

16

accuser at trial.[10] In any event, as we argued to the Magistrate, the Second Circuit has held that the use of a disguise to conceal the identity of a key witness does <u>not</u> violate the Confrontation Clause of the Sixth Amendment. <u>Morales v. Artuz</u>, 281 F.3d 55, 62 (2d Cir. 2002) (Newman, J.) ("we doubt that permitting [the witness] to testify behind dark sunglasses was contrary to constitutional law").

In short, there is no legitimate cause to strip this undercover officer of his cover in this case. Here, plaintiff seeks the disclosure of the identity of the officer for purposes of a pre-trial discovery deposition, in a civil not criminal case, where there may never be any trial, where plaintiff would not have the benefit of any right under the Confrontation Clause even if there were a trial, and where the identity of the officer is protected by the law enforcement privilege. In these circumstances, defendants submit that this officer should be permitted the use of a disguise to shield his identity at deposition. As we argued to the Magistrate, this modest proposal will permit plaintiff to examine the witness on his knowledge of pertinent events for purposes of this civil action, while at the same time protecting the law enforcement interests of the NYPD and the personal interests of the officer and his family.

On this basis, the Magistrate's orders, which defendants submit are clearly erroneous and contrary to law for all of the foregoing reasons, should be reversed.

## CONCLUSION

For all of the foregoing reasons, defendants respectfully request that the Court reverse the Magistrate's orders and enter an order permitting Undercover Badge 6216 to provide his deposition testimony in disguise.

---

[10] After a grand jury indictment, the DA voluntarily dismissed all criminal charges against Yusuke Banno.

Dated: New York, New York
      August 21, 2007

                                      Respectfully submitted,
                                      MICHAEL A. CARDOZO
                                      Corporation Counsel of the City of New York
                                      Attorneys for Defendants
                                      100 Church Street, Room 3-130
                                      New York, New York 10007
                                      212.788.8026 (ph)

                By:        _____/s/ James Mirro_____
                                      James Mirro (JM 2265)
                                      Special Assistant Corporation Counsel
                                      Special Federal Litigation Division