UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

YUSUKE BANNO, et al.,

                              **Plaintiffs,**

          -versus-                           <u>06 CV 2270 (KMK)(JCF)</u>

THE CITY OF NEW YORK, et al.

                           **Defendants.**

------------------------------------------------------------------- x

JAMES MIRRO, an attorney duly admitted to practice in the United States District Court for the Southern District of New York, declares under penalty of perjury and pursuant to 28 U.S.C. §1746 that the following is true and correct:

    1.    I am a Special Assistant Corporation Counsel in the office of MICHAEL A. CARDOZO, Corporation Counsel of the City of New York, attorney for defendants.

    2.    I am familiar with the facts and circumstances stated herein based upon personal knowledge, the books and records of the City of New York, and conversations with its agents and employees.

    3.    I submit this declaration in support of defendants' appeal of two orders of Magistrate Francis pursuant to Rule 72 of the Federal Rules of Civil Procedure.

    4.    I certify that the document attached as Exhibit "A" to this declaration is a true and correct copy of the felony complaint against plaintiff Yusuke Banno.

    5.    I certify that the documents attached as Exhibit "B" to this declaration are true and correct copies of correspondence from myself to Jeffrey Fogel, and to Magistrate Francis, dated July 9, 2007, July 12, 2007, July 18, 2007 and July 27, 2007 (with redactions to shield the

identity of an undercover officer and excluding certain exhibits that have no bearing on this appeal).

6.      I certify that the documents attached as Exhibit "C" to this declaration are true and correct copies of the two orders of Magistrate Francis that are the subject of this appeal (with redactions to shield the identity of an undercover officer).

7.      I certify that the document attached as Exhibit "D" to this declaration is a true and correct copy of the Declaration of Chief Thomas Graham.

8.      There is no Exhibit "E" to this declaration.

9.      I certify that the document attached as Exhibit "F" to this declaration is a true and correct copy of the Declaration of Deputy Commissioner David Cohen, dated August 21, 2007, which also attaches (as Exhibit "A") the Declaration of Deputy Commissioner David Cohen dated June 6, 2007.

10.      I certify that the document attached as Exhibit "G" to this declaration is a true and correct copy of an order of Magistrate Francis.

11.      I certify that the document attached as Exhibit "H" to this declaration is a true and correct copy of an order of Magistrate Francis.

12.      I certify that the documents attached as Exhibit "I" to this declaration are true and correct copies of correspondence from plaintiffs' counsel dated July 9, 2007 and July 11, 2007 (with redactions).

Dated: New York, New York
          August 22, 2007



                                                    _____
                                                    JAMES MIRRO
                                                    Special Assistant Corporation Counsel

Exhibit A

COUNTY OF NEW YORK

Page 1 of 3

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK<br>-against-<br><br>1. Yusuke Banno (M 21)<br>2. Nathan Ebert (M 24)<br>3. John Johnson (M 34)<br>4. Nicholas Klinosay (M 20)<br><br>464082<br><br>Defendants. | FELONY<br>ADA FERRARI<br>212-335-3885 |



Police Officer Orlando Rivera, shield 25912 of the Patrol Boro Bronx Task Force, states as follows:

On August 29, 2004, at about 16:10 hours at 34 ST. & 6 AVE. in the County and State of New York, the Defendants committed the offenses of:

1.   PL120.10(3)   Assault in the First  Degree   **2004NY063892**
                    (defendant #1: 1 count)
                    (defendant #2: 1 count)
                    (defendant #3: 1 count)
                    (defendant #4: 1 count)
2.   PL120.08       Assault on a Peace Officer, Police Officer, Fireman or EMS Professional
                    (defendant #1: 1 count)
                    (defendant #2: 1 count)
                    (defendant #3: 1 count)
                    (defendant #4: 1 count)
3.   PL120.25       Reckless Endangerment in the First Degree
                    (defendant #1: 1 count)
                    (defendant #2: 1 count)
                    (defendant #3: 1 count)
                    (defendant #4: 1 count)
4.   PL205.60       Hindering Prosecution in the Second Degree
                    (defendant #1: 1 count)
                    (defendant #2: 1 count)
                    (defendant #3: 1 count)
                    (defendant #4: 1 count)
5.   PL240.06       Riot in the First Degree
                    (defendant #1: 1 count)
                    (defendant #2: 1 count)
                    (defendant #3: 1 count)
                    (defendant #4: 1 count)

CONFIDENTIAL

BANNO (D) 0038

THE PEOPLE OF THE STATE OF NEW YORK
-against-

1. Yusuke Banno (M 21)
2. Nathan Ebert (M 24)
3. John Johnson (M 34)
4. Nicholas Klinosay (M 20)

Defendants.

FELONY
ADA FERRARI
212-335-3885

464082

| 6. | PL205.30 | Resisting Arrest |
| | | (defendant #1: 1 count) |
| | | (defendant #2: 1 count) |
| | | (defendant #3: 1 count) |
| | | (defendant #4: 1 count) |
| 7. | PL195.05 | Obstruction of Governmental Administration in the Second Degree |
| | | (defendant #1: 1 count) |
| | | (defendant #2: 1 count) |
| | | (defendant #3: 1 count) |
| | | (defendant #4: 1 count) |

the defendants, under circumstances evincing a depraved indifference to human life, recklessly engaged in conduct which created a grave risk of death to another person and thereby caused serious physical injury to another person; the defendants, with intent to prevent a peace officer, police officer, fireman, fireman acting as a paramedic, emergency medical technician administering first aid in the course of performance of duty as a fireman, emergency medical service paramedic and emergency medical service technician from performing a lawful duty, caused serious physical injury to that person; the defendants, under circumstances evincing a depraved indifference to human life, recklessly engaged in conduct which created a grave risk of death to another person; the defendants rendered criminal assistance to a person who had committed a class B or C felony; the defendants engaged in tumultuous and violent conduct simultaneously with ten or more persons and thereby intentionally and recklessly created a grave risk or causing public alarm and in the course of and as a result of such conduct, a non-participant suffered physical injury and substantial property damage occurred; the defendants intentionally attempted to prevent a police officer or peace officer from effecting an authorized arrest of himself or another person; and the defendants intentionally prevented and attempted to prevent a public servant from performing an official function by intimidation, physical force and interference and by means of an independently unlawful act.

The offenses were committed under the following circumstances:

CONFIDENTIAL



THE PEOPLE OF THE STATE OF NEW YORK
-against-

1. Yusuke Banno (M 21)
2. Nathan Ebert (M 24)
3. John Johnson (M 34)
4. Nicholas Klinosay (M 20)

464082

Defendants.

FELONY
ADA FERRARI
212-335-3885

Deponent states deponent is informed by U/C Shield # 6216, of the Intelligence Bureau, Special Services Unit, that informant observed (i) the defendants marching together with nine separately charged defendants and approximately 50 additional individuals all of whom, based on informant's training and experience investigating anarchist groups, were anarchists, in an organized fashion with a large paper mache dragon that was at least 20 feet in length; (ii) defendants and others stop in unison and defendant Banno and approximately six or seven additional marchers light said paper mache dragon on fire using matches and accelerants; (iii) defendants Ebert, Johnson, Klinosay and others in the group run in unison from the dragon while unapprehended members of said group threw smoke grenades at responding police officers; (iv) defendants Ebert, Johnson and Klinosay and nine seperately charged defendants and numerous unapprehended defendants form a cordon around the escaping grenade throwers and arsonists, preventing offficers from arresting them by interlocking there arms and not allowing officers to get through to make lawful arrests; (v) the paper mache dragon engulfed in flames requiring NYC Fire Department personnel and apparatus to extinguish.
Deponent is further informed by P.O. John Park, Shield
# 20166 of the 26th Pct that when informant tried to arrest defendant Banno next to the burning paper mache dragon defendant Banno resisted arrest in that he wrestled informant to the floor and refused to submit to the lawful arrest and in doing so caused P.O. Parks' hand to become lodged in the burning dragon causing Third Degree burns to P.O. Parks hand requiring hospitalization with possible nerve damage to said hand.
Deponent further states deponent recovered a box of matches and an oven mitt from defendant Banno who wore a black mask to conceal his face and he wore a hat that said Fuck the Pigs and had a silouhette of three police officers on the front with target marks on each of their heads.
Deponent further states defendants Johnson, Klinosay and numerous seperately charged defendants and unapprehended defendants wore masks to conceal their faces.

**False statements made herein are punishable as a class A misdemeanor pursuant to section 210.45 of the penal law.**

_____                    8/30/04    0510
Deponent                                    Date and Time

ACT 5 Version 4 2 0 Created on 08 30 04 5:10 AM

CONFIDENTIAL                                    BANNO (D) 0041

Exhibit B



THE CITY OF NEW YORK
# LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

MICHAEL A. CARDOZO
*Corporation Counsel*

JAMES MIRRO
*Special Assistant Corporation Counsel*
*phone (212) 788-8026  fax (212) 788-9776*

July 9, 2007

***BY FAX*** E mail

Jeffrey E. Fogel, Esq.
215 Spruce Street
Charlottesville, VA  22902

Re:  ***Banno v. The City of New York, et al.***
***USDC SDNY 06 CV 2270 (KMK) (JCF)***

Dear Jeff:

In anticipation of next week's depositions, I am producing to you the privilege log that corresponds to various redactions in our document production.  In addition, we have collected the CCRB history of U/C 6216 and I can now represent to you that U/C 6216 has not been the subject of any CCRB complaints, either substantiated or unsubstantiated, that are related to any of the plaintiff's claims.

I also write about the email I received from you today.  When we last spoke in detail about the deposition of U/C 6216, I said that we would need to take precautions to avoid the disclosure of his identity and appearance.  As you may recall, in the case of ▮▮▮▮▮▮▮▮▮ although you represented that you had a photograph of him, we produced him in disguise and we produced him at this office where we could assure that his identity was protected to the maximum extent possible.  Neither you nor any other plaintiffs' counsel objected.

In the case of U/C 6216, whose identity and appearance are not public, I advised you that we would take additional precautions including the possible use of a screen at his deposition.  You said that, while you did not understand the need for the procedure, you would not object to it.  You said words to the effect that you didn't care about his appearance so long as you had an opportunity to question him under oath.  We agreed to proceed on that basis.  I remind you that plaintiff stands to gain nothing from the disclosure of the identity or appearance

of the undercover officer, even if the Court were to order that procedure. In short, I believe this is a fight that we need not have and I respectfully ask you to reconsider your current objection.

I will be at a deposition tomorrow, but I invite you to call me to discuss this on Wednesday. Thanks for your cooperation.

Very truly yours,

James Mirro



### THE CITY OF NEW YORK
## LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

**MICHAEL A. CARDOZO**
*Corporation Counsel*

**JAMES MIRRO**
*Special Assistant Corporation Counsel*
*phone (212) 788-8026   fax (212) 788-9776*

*CONFIDENTIAL PURSUANT*
*TO PROTECTIVE ORDER #1*

July 12, 2007

*BY FAX*

The Honorable James C. Francis IV
United States Magistrate Judge
Daniel Patrick Moynihan
   United States Courthouse
500 Pearl Street - Room 1960
New York, New York 10007-1312

       Re:   **_Banno v. The City of New York, et al._**
               **_USDC SDNY 06 CV 2270 (KMK) (JCF)_**

Dear Judge Francis:

        I write in response to Jeffrey Fogel's letter to the Court dated July 9, 2007 ("Fogel Letter"), and in response to Jonathan Moore's letters to the Court dated July 11 and 12, 2007 ("Moore Letters"), which concern the upcoming deposition of Undercover Officer 6216.

        Undercover 6216, who is named as a defendant in the captioned action, has appeared through an answer to the plaintiff's complaint and has responded to all discovery requests served upon him in this action. He plans to appear for his deposition next week. Defendants now respectfully request that the Court enter an order that permits him to use a screen to maintain his anonymity while giving his deposition testimony in this action; and that his deposition be held at the Law Department for the reasons discussed more fully below. This would permit him to provide testimony without risking the disclosure of his appearance or identity; without risking the loss of his career as an undercover officer with the NYPD; and without risking the integrity of the NYPD's undercover operations in which he is currently involved.

        By way of background, U/C 6216 is the second undercover officer called to testify at deposition in this action. On ██████████, Detective John ███ provided a full day of deposition testimony concerning the events that transpired on August 29, 2004 in front of

Madison Square Garden ("the Garden").[1]  With the consent of plaintiffs' counsel (including Beldock Levine), ▮▮▮▮▮▮▮ (who was not working undercover at the time of the RNC but who was working undercover at the time of his deposition) was produced for his deposition at the Law Department in a disguise.  He was produced at the Law Department, and in disguise, so that his appearance and identity could be protected to the maximum extent possible consistent with him giving a deposition in a civil case.  At the inception of that deposition, I asked that there be no videotaping, photography or audio taping of that deposition.  None of the plaintiffs' counsel who were present (including Jeffrey Fogel, Rachel Kleinman and Jason Rozger) objected to that procedure.  The deposition proceeded until it was concluded at nearly 5 p.m.[2]

As Mr. Fogel and I have discussed previously, in the case of U/C 6216, one additional precaution – the use of a screen to conceal the appearance of the undercover officer -- is required.  I discussed this issue with Mr. Fogel some months ago.  When we last discussed it, Mr. Fogel said that he didn't care about the name or appearance of U/C 6216 so long as he had an opportunity to question him under oath.  We agreed to proceed on that basis.  On July 9, I wrote to remind Mr. Fogel of that agreement and to confirm that we would produce another witness (Detective Cummings) at the offices of Beldock Levine (Exhibit "A" hereto).  Mr. Fogel abruptly advised that he would seek relief from the Court (Exhibit "A" hereto).

In his application, Mr. Fogel concedes that "Badge 6216 can come to the deposition in disguise."  Plaintiff's Letter at 2, ¶ 2.  Indeed, in a telephone conversation that I had with Mr. Fogel on July 10, he again represented that U/C 6216 "can wear whatever he wants."  In addition, in his application, plaintiff concedes that "While I don't think that deponent's counsel should be able to dictate the location of the deposition, I am less concerned by that than by the inability to see the deponent."  Plaintiff's Letter at 1, ¶ 2.  Defendants submit, therefore, that the only issue for resolution is whether U/C 6216 may be produced for deposition behind a screen that conceals his appearance and identity.

Contrary to the suggestion in both Mr. Fogel's Letter and Mr. Moore's Letters, no plaintiff in the consolidated RNC cases has ever formally noticed the deposition of U/C 6216 nor ever sought his production at any particular office or address.  Rather, U/C 6216 is being produced solely pursuant to the agreement that I reached with Mr. Fogel (that calls for his production at the Law Department with his identity concealed).

In any event, according to the Second Circuit, the purposes of the law enforcement privilege include the protection of "witnesses and law enforcement personnel" and

---

[1] On August 29, 2004, a group of individuals including plaintiff Yusuke Banno (who marched behind a red and black banner identifying them as anarchists and wore masks to conceal their identities) lit fire to a large parade float as it passed the Garden.  NYPD videotapes and still photos produced in this case depict the float bursting into flames (after it was apparently doused with a liquid accelerant) while in the midst of a densely packed crowd of thousands of peaceful protesters.  Detective Park was burned while struggling to bring Mr. Banno into custody.  Smoke bombs were tossed at other NYPD officers as they attempted to apprehend other individuals believed to be responsible.  U/C 6216 was a witness to the event.



the prevention of "interference with an investigation." In re Department of Investigation, 856 F.2d 481, 484 (2d Cir. 1988); see also Frankel v. SEC, 460 F.2d 813, 817-18 (2d Cir. 1972); Morrissey v. City of New York, 171 F.R.D. 85, 90 (S.D.N.Y. 1997) (the focus of the law enforcement privilege is on the "ability of the police department to conduct effective law enforcement"); Raphael v. Aetna Casualty & Surety Co., 744 F. Supp. 71, 74 (S.D.N.Y. 1990) ("Law enforcement operations have little hope of being effective if conducted in full public view").

Defendants respectfully submit that an undercover officer's appearance and identity fall comfortably within the protections afforded by the law enforcement privilege. Defendants remind the Court that disclosure of the appearance or identity of U/C 6216 would jeopardize the NYPD's undercover operations in which 6216 is currently involved; and, if the service of this anonymous officer were lost due to the disclosure of his appearance or identity, it would constitute a substantial loss to the NYPD's undercover program due to the very significant time, money and other resources invested in his training. In addition, U/C 6216 asks the Court to consider that disclosure of his appearance or identity could jeopardize both his and his family's personal safety, as well as his career as an undercover officer within the NYPD.

Defendants' request that the Court order that this officer be permitted to have his deposition taken at the Law Department and appear behind a screen means that plaintiffs will be permitted to examine the witness on his knowledge of pertinent events for purposes of this civil action while at the same time protecting the law enforcement interests of the NYPD and the personal interests of the officer himself. Production of this officer at the Law Department will permit defendants to provide far greater protection to him. That is because, among other things, it allows defendants the flexibility to determine when and how the officer will enter the building; when and how he will leave the building; to ensure that the officer is not followed either entering or leaving the building; and otherwise to control the environment. In addition, it avoids the necessity of having the officer photographed at the security desk at the offices of plaintiffs' counsel, which is the practice at that building. The NYPD regards these considerations to be essential in the handling of undercover officers.

Defendants note that, notwithstanding the need for the continued anonymity of U/C 6216, plaintiffs' counsel have refused to assure defendants or the Court that they will respect the confidentiality of U/C 6216's identity either during or after his deposition. In his letter, Mr. Fogel states only that "I am prepared to maintain, at least for now, the confidentiality of the officer's appearance." Plaintiff's Letter at 2, ¶ 2. For his part, Mr. Moore (who never even noticed the deposition of U/C 6216 nor participated in the agreement pursuant to which defendants planned to produce him) now insists upon his production without any protection of his identity whatsoever. Indeed, Mr. Moore insists, without citing any legal authority, that defendants disclose the undercover's name. Mr. Moore, moreover, offers only "to keep this deposition transcript confidential until such times as its use is required in response to a motion or at trial." Moore Letter at 2, ¶ 2.

In short, plaintiffs' arguments make plain that if U/C 6216's appearance and identity are not concealed during the deposition, they certainly will not be protected thereafter.

For all of these reasons, including the parties' prior agreement to protect the identity of U/C 6216 at and after his deposition, defendants ask the Court to enter an order

permitting defendants to produce U/C 6216 for deposition behind a screen and without disclosing his appearance or identity; and to produce him at the Law Department, where these arrangements can be made quickly and efficiently, and where his identity can be best protected.

      Thank you.

                                                            Very truly yours,

                                                            James Mirro

cc:    Jeffrey Fogel, Esq. (by fax)
       Jonathan Moore, Esq. (by fax)

**Mirro, James**

| | |
|---|---|
| **From:** | Jeff Fogel [jeff.fogel@gmail.com] |
| **Sent:** | Monday, July 09, 2007 5:59 PM |
| **To:** | Mirro, James |
| **Cc:** | Rachel Kleinman; jrozger@bmbblaw.com |
| **Subject:** | Re: U/C 6216 |

*Exh. "A"*

I don't agree and intend to seek relief from the court.

On 7/9/07, **Mirro, James** <jmirro@law.nyc.gov> wrote:
Jeff, consistent with the way we handled ███████████ we will have to produce 6216 here at 100 Church. In addition, we wi
have to use a screen with him. We will produce Cummings at Beldock Levine. Let me know if you have any questions or
concerns. Thx.

> *James Mirro*
> *Special Federal Litigation*
> *Office of the Corporation Counsel*
> *Law Department of The City of New York*
> *100 Church Street - 3-130*
> *New York, New York 10007*
> *(ph) 212.788.8026*
> *(fax) 212.788.9776*



THE CITY OF NEW YORK

# LAW DEPARTMENT

MICHAEL A. CARDOZO
*Corporation Counsel*

100 CHURCH STREET
NEW YORK, NY 10007

JAMES MIRRO
*Special Assistant Corporation Counsel*
*phone (212) 788-8026    fax (212) 788-9776*

July 18, 2007

***BY E-MAIL***

Jeffrey E. Fogel, Esq.
215 Spruce Street
Charlottesville, VA 22902

> *Re:* ***Banno v. The City of New York, et al.***
> ***USDC SDNY 06 CV 2270 (KMK) (JCF)***

Dear Jeff:

You asked me to confer with my client, U/C 6216, to determine his availability for deposition this Friday. As you know, he had been scheduled for deposition this Thursday (tomorrow). Earlier this week, we asked the Court to permit us to adjourn that deposition because we were advised that U/C 6216's father had been scheduled for emergency triple bypass surgery on Thursday. Although you did not consent to that request, the Court agreed with defendants and permitted that deposition to be adjourned.

Despite your knowledge of the officer's need to attend to his family at this difficult time, you have continued to press this week for his deposition on Friday -- which you know is the day after his father was scheduled for cardiac surgery. Please be advised that U/C 6216 is not available for deposition on Friday. I will provide you other dates when he is available to be deposed. In the mean time, would you please let me know if you are willing to accept Judge Francis' suggestion that you depose him by phone?

Attached please find an additional document (BANNO (D) 0267-68) responsive to your document requests, which we have marked "Confidential" and is subject to Protective Order #1. It is redacted on the basis of law enforcement privilege. Finally, I note that, in your most recent letter and on the phone with the Court this week, you disclosed that you believe that you have determined the identity of the Undercover Officer. I trust that you will not disclose that name, as you state in your letter, and I remind you that that information is covered by the protective order entered in this action.

Thanks for your cooperation.

Very truly yours,

James Mirro



THE CITY OF NEW YORK
# LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

MICHAEL A. CARDOZO
*Corporation Counsel*

JAMES MIRRO
*Special Assistant Corporation Counsel*
*phone (212) 788-8026   fax (212) 788-9776*

***CONFIDENTIAL PURSUANT***
***TO PROTECTIVE ORDER #1***

July 27, 2007

***BY FAX***

The Honorable James C. Francis IV
United States Magistrate Judge
Daniel Patrick Moynihan
    United States Courthouse
500 Pearl Street - Room 1960
New York, New York 10007-1312

Re:  ***Banno v. The City of New York, et al.***
     ***USDC SDNY 06 CV 2270 (KMK) (JCF)***

Dear Judge Francis:

   On July 13, 2007, the Court entered its order concerning the terms by which defendants were to produce U/C 6216 for deposition. The Court ordered, *inter alia*, that "The undercover need not reveal his identity, but he shall otherwise be deposed in the normal manner, without a screen or disguise." Order of July 13, 2007 (attached hereto as Exhibit A). In addition, during a conference call on July 16, 2007, between myself, Mr. Fogel (the only plaintiffs' counsel to have noticed this deposition) and Your Honor, the Court suggested that the deposition of U/C 6216 be conducted by phone. Defendants agreed to the Court's proposal, which resolved several difficult issues, but plaintiff so far has resisted it.

   Since the Court's order of July 13, I have consulted with my clients. They have advised me that, while they appreciate that Your Honor's decision of July 13 recognizes and provides for the need to protect the identity of the undercover, they nevertheless believe that it is essential that U/C 6216 be permitted to disguise his appearance during the deposition. The additional precaution provided by a disguise addresses the concern that, given the number of attorneys potentially present at the deposition, many of whom represent clients in other civil and criminal proceedings, it is not unrealistic that one of those attorneys may cross paths with U/C 6216 in the courthouse in the future.

This concern is not merely academic or hypothetical. Defendants note that plaintiffs' counsel in this and the related RNC actions are active in numerous other civil actions against the City arising from the NYPD's law enforcement activities both before and after the RNC. Mr. Fogel, who was previously with the NYCLU, Mr. Moore and other RNC plaintiffs' counsel have a long history of litigating such actions. Were they to observe U/C 6216 without any disguise, they easily might identify him at a later time, either in person or while reviewing videotape depicting other illegal activities at other places and times. While we do not mean to suggest that, should that occur, the attorney intentionally would reveal the undercover's identity, the risk of that eventuality exists.[1]

In his letter of July 9, 2007, Mr. Fogel argued that he wanted to be able to see the witness at his deposition in order to assess his credibility. "I request that an order be entered that he be deposed . . . in a manner that counsel can clearly see him and his face." Plaintiff's Letter of July 9, 2007 at 2, ¶2 (attached hereto as Exhibit A). Mr. Fogel emphasized that he was chiefly concerned with "the inability to see the deponent." Id. at 1, ¶2. Mr. Fogel added that he wanted "to look at him, his facial posture and gestures as well as his body movements." Id. at ¶3.

With plaintiffs' concerns in mind, in correspondence that I have had with Mr. Fogel recently, defendants have offered to produce U/C 6216 *without* a screen (as defendants originally had proposed) and *without* sunglasses (although plaintiffs never objected to sunglasses during the deposition of another undercover officer in this action), but *with* a wig and mustache. Defendants submit that this minimal disguise, which is no more than any individual might grow naturally, still would permit the witness sufficient anonymity to provide some comfort to him and to the Intelligence Division. At the same time, defendants submit that it addresses Mr. Fogel's concerns by permitting him to see the witness during the examination.

In response, Mr. Fogel now insists that he is entitled to have the witness appear at the deposition just as we would produce him before a jury. Putting aside the fact that no witness at deposition ever makes an assurance that he will appear at trial just as he has appeared at deposition, and that the witness may not be required to testify at trial, counsel offers no reason as to why this is necessary. Indeed, if U/C 6216 were required to testify at trial in this civil action, we would again request that he be permitted to do so with a disguise to preserve the ability of the NYPD to use him as an undercover in the future. The Second Circuit has held that, even in the context of a criminal case, the Court may permit a witness to testify with an altered appearance without violating the Confrontation Clause of the Sixth Amendment. Morales v. Artuz, 281 F.3d 55, 62 (2d Cir. 2002) (Newman, J.) ("we doubt that permitting [the witness] to testify behind dark sunglasses was contrary to constitutional law").

For these reasons, defendants now respectfully seek an order permitting defendants to produce U/C 6216 for deposition by telephone; or permitting U/C 6216 to wear a wig and mustache to his deposition. In addition, defendants request that the Court enter an order prohibiting plaintiffs' counsel from recording, or disclosing to anyone, any information about the appearance or identity of U/C 6216.

---

[1] As the Court no doubt recalls, the City's confidential documents were disclosed in the RNC cases notwithstanding the clear prohibition against such disclosure. It proved impossible to determine the source of the leak and the episode left the City with little expectation that it could count on confidentiality even when it has been ordered by the Court.

Thank you for your consideration.

Very truly yours,

James Mirro

cc:    Jeffrey Fogel, Esq. (by email)

Exhibit C

**JEFFREY E. FOGEL**
ATTORNEY AT LAW

MEMO ENDORSED

USDC SDNY   212-608-5517
DOCUMENT   FAX 434-295-6594
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/13/07

215 SPRUCE STREET
CHARLOTTESVILLE, VA 22902

July 9, 2007

LEAD CASE 04 CIV 7422
(KMK) (JCF)

Hon. James C. Francis IV
United States Magistrate Judge
500 Pearl Street, Room 1960
New York, NY 10007-1212

Re: Banno v. City of New York, et al.
06 CV 2270 (KMK)

Dear Judge Francis:    file in both    Rechtschaffer, 05 Civ. 9930 (KMK)

I write to request relief with respect to a deposition scheduled (and "so ordered") for July 19, 2007. The deponent is one of the named defendants, John Doe Badge Number 6216. The defendants have refused to provide his name.

Mr. Mirro advised me today that defendant will only appear at the offices of the Corporation Counsel for this deposition and that he will appear behind "a screen." While I don't think that deponent's counsel should be able to dictate the location of the deposition, I am less concerned by that than by the inability to see the deponent and gauge his credibility in the same way that a jury would be able to make that same judgment. Indeed, there is no indication that this officer appeared at the grand jury behind a screen or in disguise, nor that the grand jury proceedings were held at 100 Church Street.

While I recognize that this officer works under cover for the intelligence division, he is a key component to this case, as the only person to identify the plaintiff as having started the fire for which he was charged. He was the principal witness before the grand jury and the only one to have asserted that plaintiff engaged in any criminal conduct. He was to be the chief witness for the district attorney until he concluded that my client could not have started the fire in question. His credibility is crucial. It is impossible to truly judge someone's credibility without being able to look at him, his facial posture and gestures as well as his body movements. Part of the purpose of a deposition is to gauge how the deponent will appear as a witness in front of a jury.

The morning of the deposition of another defendant, ████ Mr. Mirro called to advise me that he would only appear at the law department and that ████████ would be in disguise as he was now involved in some kind of under cover work. Mr. Mirro knew, and I reminded him, that I had glossy color photos of

Hon. James C. Francis IV
July 9, 2007
-page 2-

████████ and there was no need for a disguise.  He refused to
proceed otherwise and so we proceeded with the deposition rather
than have it delayed further.  ████████ appeared in a wig,
with large sunglasses and a baseball cap.  Notwithstanding the
fact that there was no discussion of ████████████ work, Mr.
Mirro designated the deposition as confidential.

     Badge 6216 can come to the deposition in disguise.  I
request that an order be entered that he be deposed where noticed
by plaintiff's counsel and without disguise in a manner that
counsel can clearly see him and his face.  None of the plaintiffs
will be there and I am prepared to maintain, at least for now,
the confidentiality of the officer's appearance.

                              Respectfully submitted,


                              Jeffrey E. Fogel

cc: James Mirro, Esq. (By Fax: (212) 788-9776)
    Rachel M. Kleinman, Esq.
    Jason J. Rozger, Esq.

7/13/07

The deposition of the undercover shall be
conducted at the offices of Corporation
Counsel. No one other than counsel
shall attend. The undercover need not
reveal his identity, but he shall otherwise
be deposed in the normal manner,
without a screen or disguise.

                         SO ORDERED.

                         James C. Francis IV
                              USMJ

UNITED STATES DISTRICT COURT                    (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - :
YUSUKE BANNO,                                   : 06 Civ. 2270 (KMK) (JCF)
                                                :
                    Plaintiff,                  :      O R D E R
                                                :
       - against -                              :
                                                :
CITY OF NEW YORK, POLICE OFFICER                :
JOHN PARK, POLICE OFFICER ORLANDO               :
RIVERA and JOHN DOE,                            :
                                                :
                    Defendants.                 :
- - - - - - - - - - - - - - - - - - :
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: 7/31/07

       Defendants having sought reconsideration of my July 13, 2007

Order directing that UC 6216 appear for deposition without

disguise, it is hereby ORDERED as follows:

       1.  Reconsideration is granted and the July 13, 2007 Order is

modified to the extent that plaintiffs' counsel may not record or

disclose to anyone any information about the appearance or identity

of UC 6216.

       2.  The order that UC 6216 appear for deposition without

disguise is reaffirmed.  Defendants' suggestion that plaintiffs'

counsel might encounter the witness subsequently and, if they did,

might reveal his identity, is sheer speculation.


                    SO ORDERED.


                    _James C. Francis IV_
                    JAMES C. FRANCIS IV
                    UNITED STATES MAGISTRATE JUDGE


                                1

Dated:      New York, New York
            July 31, 2007

Copies mailed this date:

Jeffrey E. Fogel, Esq.
215 Spruce Street
Charlottesville, VA 22902

James Mirro, Esq.
Special Assistant Corporation Counsel
City of New York Law Department
100 Church Street
New York, New York 10007

Exhibit D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
MCNAMARA, et al.,

                               Plaintiffs,          **DECLARATION OF**
                                                    **THOMAS GRAHAM**

               -against-

CITY OF NEW YORK, et al.,

                                       04 CV 9216 (KMK) (JCF)
                        Defendants.

-------------------------------------------------------------------- x

    **THOMAS GRAHAM,** declares under penalty of perjury and pursuant to 28 U.S.C. § 1746, that the following statements are true and correct:

        1.     I am the Commanding Officer of the Disorder Control Unit ("DCU") for the New York City Police Department and have held this position since 1995. Prior to that time, I was the Operations Officer of the DCU. As such, I am familiar with the facts stated herein. I submit this declaration in support of the City's opposition to production of privileged documents.

        2.     Among the DCU's responsibilities are the conducting of comprehensive reviews of the New York City Police Department's plans for responding to civil disorders, developing training programs, ensuring the coordinated mobilization of police personnel during major events and disorders and reviewing police response at an event to assess and assist in future planning. The DCU's primary objective is to maintain order and public safety at large-scale events.

        3.     As the Commanding Officer of the DCU, I have been responsible for the planning, supervision and review and critique of the policing of hundreds of demonstrations. Specifically, for the Republican National Convention ("RNC"), I devised the plans for the

Mobile Reserve Sector and I developed the training and tactics for approximately 1500 police officers.

4.    I have reviewed the documents that are the subject of plaintiffs' motion to compel. The information that plaintiffs seek is highly sensitive and, if revealed, would severely undermine the strategies and tactics used by the Police Department to counter unlawful activity, including terrorism. The danger in disclosing this information is that it would expose to the public the capabilities and -- and hence, the weaknesses -- of the Police Department in responding to and controlling unlawful activity. As such, it is imperative that the information remain protected from disclosure. I now address each of the documents challenged by plaintiffs.

5.    <u>Disorder Control Incident Tabletop Exercises</u> and <u>Disorder Control Incident Action Items</u>. I understand that plaintiffs seek to compel disclosure of the following documents:

    a.  Disorder Control Incident Tabletop Exercise, May 3, 2004 (NYC 5849-5855);

    b.  Disorder Control Incident Tabletop Exercise, May 12, 2004 (Bates 10,596-10,601);

    c.  Disorder Control Incident Tabletop Exercise, May 26, 2004 (NYC 6056-6062)

    d.  Draft, Disorder Control Incident Action Items for May 12, 2004 Tabletop Exercise (Bates 10,587-10,590);

    e.  Draft, Disorder Control Incident Action Items for May 3, 2004 Tabletop Exercise (Bates 10,591-10595)

6.    Prior to the RNC, various senior leaders of the NYPD, including myself, met at the Police Commissioner's office to plan and prepare for anticipated types of possible civil disorder during the Convention. In an effort to facilitate discussion among the leaders,

- 2 -

documents known as "Disorder Control Incident Tabletop Exercises" (Tabletop Exercises") (documents (a) through (c) above) were handed out during the meetings. These documents contain hypothetical scenarios of possible civil disorder and include such facts as potential terrorist targets, times and locations of potential terrorist activity, as well as the anticipated types of terrorist activity.

7.    Following each hypothetical is a set of "talking points" which are questions that are meant to facilitate discussion to address the concerns of the Department in how to handle these proposed scenarios. More specifically, they address the NYPD's vulnerabilities and weaknesses in handling certain types of disorder. For example, some of the talking points raise the following issues: (i) potential communication problems that the Department may face during certain events; (ii) the Department's deployment constraints; (iii) the Department's resources that are available and how they would be allocated; and (iv) the use and evaluation of intelligence information received by the Department.

8.    In addition, I understand that plaintiffs seek disclosure of the "Control Incident Action Items" ("Action Items") (documents (d) and (e) above). The Action Items are documents which were prepared upon the conclusion of the Tabletop Exercises and contain the proposed courses of action to be undertaken by the senior leaders to address the weaknesses and vulnerabilities of the NYPD, including with respect to counterterrorism, that were discussed during the Tabletop Exercises.

9.    Defendants oppose disclosure of this information as it would educate lawbreakers on the weaknesses of the NYPD. It would educate groups with a history of unlawful or violent behavior and would-be terrorists about how the Department would respond to the scenarios therein and the types of scenarios that the Department is prepared to handle (and

hence may not be prepared to handle). It also educates individuals on disruptive tactics typically used at demonstrations and the Department's methods and weaknesses in addressing those tactics. It would similarly educate them on how to commit egregious acts against the City; on how to shut down various City facilities and/or systems of mass transportation; on how to divert police resources; and on how to evade apprehension. For all of these reasons, defendants would be severely harmed by disclosure of the information.

          10.   <u>Undercover Officers</u>. I understand that plaintiffs seek to compel information regarding the Department's use (or non-use) of undercover officers during the RNC and the identities of those officers. Information regarding the identities of undercovers officers is highly sensitive and is information that the NYPD takes great measures to protect. For example, undercover officers rarely testify in open court. In the atypical case where the undercover officer is required to do so, they are generally identified only by shield number and efforts are made to exclude the public from the proceeding. Similarly, the NYPD places stringent restrictions on access to information about undercover officers in the NYPD personnel database. The identities of undercover officers cannot be revealed because, once known, undercover officers will no longer be able to effectively conduct their duties in an anonymous capacity of detecting criminal activity and apprehending criminals. Disclosure of the identity of an undercover officer both undermines the Department's ability to utilize that officer in the future – as it eviscerate that officer's general ability to operate in an undercover capacity – and poses a significant safety risk to that officer, should it become known that he/she is a member of the NYPD.

          11.   Similarly, I understand that plaintiffs seek disclosure of the Department's use (or non-use) of undercover and plainclothes officers during the RNC. Plaintiffs should not

have knowledge of whether undercover or plainclothes officers are used during certain types of events because confirmation of this information will defeat the element of uncertainty, which itself deters criminal activity.

12.    Plaintiffs also seek to compel documents pertaining to plainclothes officers. The challenged documents are as follows:

a.    June 4, 2004 Memo from Executive Officer, Patrol Borough Queens South to RNC Coordinator, "Advanced Counterterrorism Training" (NYC 5920-5921) for plainclothes officers; and

b.    August 9, 2004 Memo from Commanding Officer, Disorder Control Unit to Commanding Officer re outfitting plainclothes officers (NYC 5770-5773)

13.    Document NYC 5920-5921 contains a list of the names of law enforcement personnel who were deemed qualified to be plainclothes officers in the event that they were to be used. It also discusses requests for advanced counterterrorism training to qualify these officers for security assignments. This information cannot be revealed, as it would show the types of counterterrorism assignments for which plainclothes officers may be used at large-scale events.

14.    Document NYC 5770-5773 is a document that I personally drafted which pertains to the identification of plainclothes officers, disclosure of which would permit non-NYPD persons to identify plainclothes officers at future events. As shown above, disclosure of this information undermines the effectiveness of plainclothes officers and poses a safety risk to that officer.

15.    Memoranda regarding RNC Legal Subcommittee Meetings. I understand that plaintiffs are challenging the redactions made to the following memoranda regarding discussions that took place at RNC Legal Subcommittee meetings:

- 5 -

a. Jan. 7, 2004 Memo from DC John Gerrish to RNC Coordinator, "Legal Committee Follow-Up Meeting" (Bates 10,491-10,493);

b. March 2, 2004 Memo from DC John Gerrish to RNC Coordinator, "Legal Committee Follow-Up Meeting" (Bates 10,503 – 10,505

16. Portions of the redacted material in each of these documents pertain to the use of modern technology by NYPD which the NYPD will continue to use to combat unlawful activity. See Bates 10,492 at ¶ 5(a)(2); Bates 10,505 at ¶ 8. This information cannot be revealed because it would inform individuals who are intent on committing criminal activity about the existence and use of the technology.

17. Bates 10492, ¶ 5(a)(3) contains information about the ongoing techniques and methods of investigation of the NYPD's Intelligence Division, which, if disclosed, would reveal how the Intelligence Division gathers intelligence at times. Disclosure of this information would undermine the viability of those techniques and methods for future investigations and ultimately compromise the NYPD's Intelligence Division's abilities to investigate anticipated unlawful activity and prevent civil disorder at future demonstrations.

18. RNC Mobile Reserve Sector After-Action Report (Bates 15,001-15,033). The RNC Mobile Reserve Sector After-Action Report dated September 24, 2004 is a document that I drafted which is a critique of the Mobile Reserve Sector and reflects the following: (i) the composition of the Mobile Field Force units used to police the RNC, i.e., the number of officers and their ranks that are deployed at specified locations throughout the City; (ii) the specified times of day/night when the officers are deployed; (iii) the modes of deployment of the NYPD's members of service; (iv) how the NYPD moves its members of service around the City; (v) strategic changes and improvements in the NYPD's response to maintain the effectiveness of the Mobile Reserve Sector; and (vi) my own critical analyses that address, among other things, the

vulnerabilities and weaknesses of the Mobile Reserve Sector that were faced with respect to equipment, communication, intelligence, recruitment and training (see, e.g., 15004 – 15006).

19.     The redacted information must not be disclosed as it reveals the patterns, strategies, and the weaknesses of the Mobile Reserve Sector.  Such disclosure would severely compromise the effectiveness of the deployment plan which the NYPD will again use in the future, as an individual who is intent on committing unlawful activity would be able to (i) anticipate the NYPD's response to an event and (ii) figure out where and when police resources are being used – and hence, where and when they are not.

20.     NYPD Emergency Operations Center RNC Incident Reports (Bates 7218-7299).  I understand that plaintiffs challenge the very limited number of redactions contained in the reports generated during the RNC.  Some of the redacted information pertains to how many officers (and of what rank) were deployed during the RNC at certain locations throughout New York City.  See, e.g., Bates 7221-7223 (deployment for mock mobilization drill at Penn Station); Bates 7284 (deployment of officers at Yankee Stadium).  It also reflects specific methods of investigations to be used by the NYPD.  See, e.g., Bates 7222; 7270.  The redacted information must not be disclosed as it reveals the patterns, strategies, and the weaknesses of the Mobile Reserve Sector, as well as the methods of its investigations.  As shown above, disclosure of this type of information would severely compromise the effectiveness of the NYPD's deployment plan should there be actual criminal activity at these locations because the NYPD's response would be known.

21.     Critical Mass Bike Block Demo (NYC 26267-26282; NYC 26303-26320). This is a Powerpoint presentation dated August 27, 2004 reflecting a plan that I assisted in developing regarding the policing of Critical Mass Bike Rides and sets forth demonstrator tactics

- 7 -

and NYPD planned responses to unlawful conduct during Critical Mass Bike Rides, including specific tactics and deployment locations. This plan will likely be used to combat unlawful conduct at future Critical Mass Bike Rides, and if disclosed would render it ineffective.

**WHEREFORE**, I respectfully request that plaintiffs' motion be denied in its entirety.

Dated:        New York, New York
              February 23, 2007

                                        _____
                                        THOMAS GRAHAM

- 8 -