UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

YUSUKE BANNO, et al.,

                      Plaintiffs,

-versus-                                           06 cv 2270 (KMK)(JCF)

THE CITY OF NEW YORK, et al.

                      Defendants.

------------------------------------------------------------------- x

**DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT
OF THEIR OBJECTIONS, PURSUANT TO FED. R. CIV. P. 72,
TO ORDERS OF MAGISTRATE JUDGE JAMES C. FRANCIS IV
COMPILING THE DEPOSITION OF AN UNDERCOVER OFFICER
WITHOUT PROTECTING THE IDENTITY OF THAT OFFICER**

                                                   MICHAEL A. CARDOZO
                        Corporation Counsel of the City of New York
                              *Attorneys For Defendants*

                                         James Mirro (JM 2265)
                        Special Assistant Corporation Counsel
                              Special Federal Litigation
                           100 Church Street, Room 3-130
                                New York, New York 10007
                                     212.788.8026 (ph)
                                     212.788.9776 (fax)

SEPTEMBER 5, 2007

## INTRODUCTION

In their memorandum of law, dated August 21, 2007 ("Appeal Brief"), defendants argued that Magistrate Francis had summarily dismissed as "speculative" the carefully considered judgment of Commissioner Cohen concerning the risks to Undercover Badge 6216 were his identity or appearance to be disclosed. Defendants noted that Commissioner Cohen's assessment of those risks was based upon his 41 years of experience in the law enforcement and intelligence community. Apparently in reliance upon the faulty argument of plaintiffs' counsel, the Magistrate did not cite any legal authority in support of his decision nor any reasoning for it. In their opposition to defendants' appeal memorandum, plaintiffs also have supplied neither legal authority nor reasoning that supports the result reached by the Magistrate. Nor have plaintiffs made any effort to reconcile the Magistrate's orders concerning Badge 6216 with the Magistrate's own prior rulings in the consolidated RNC cases. In any event, defendants respectfully submit that both case law and common sense dictate that an undercover officer's "identity" cannot be protected if he is required to reveal his undisguised physical appearance. Defendants emphasize that the case law -- including all of the case law cited by plaintiffs – in fact supports defendants' argument that a disguise is permitted to protect the identity of an undercover officer in circumstances such as those presented here.

## ARGUMENT

At the outset, defendants note that plaintiffs do not contest much of the argument set forth in defendants' Appeal Brief. Plaintiffs do not contest, for instance, that the identity and physical appearance of undercover officers are sensitive information protected by the law enforcement privilege and that courts in the Second Circuit routinely have protected that information. *See, e.g.,* In re Dep't of Investigation of the City of New York v. Myerson, 856 F.2d 481, 484 (2d Cir. 1988) (holding that the purpose of the law enforcement privilege is "to

preserve the confidentiality of sources, to protect witness[es] and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation"); United States v. Orena, 883 F. Supp. 849, 868 (E.D.N.Y. 1995) (Korman, J.) (refusing to enforce subpoenas "to the extent compliance would reveal the names or addresses of law enforcement officers [or] identify undercover surveillance vehicles"); United States v. Rodriguez, 1990 WL 41761, *1 (S.D.N.Y. 1990) (Stanton, J.) ("identification of confidential informants and undercover agents are denied"); Peck v. United States, 522 F. Supp. 245, 246 (S.D.N.Y. 1981) (Stewart, J.) (holding in civil action that privilege protected the identities of undercover officers, informants and third parties).

Plaintiffs do not even attempt to reconcile the Magistrate's two orders requiring Badge 6216 to appear without a disguise with the Magistrate's own prior orders in the consolidated RNC cases. In those orders, in Macnamara and in Dinler and Schiller, dated April 20, 2007 and August 6, 2007 respectively, the Magistrate repeatedly acknowledged that the law enforcement privilege protects from disclosure the identities of undercover officers *and* information that could be used to determine the identity of those officers. Throughout his August 6 opinion, which is discussed in more detail in defendants' Appeal Brief, the Magistrate made clear that defendants were entitled to withhold from discovery not just the "names" of undercover officers but also "identifying information" concerning undercover officers. *See* Appeal Brief at 12 & n.6. Among other things, the Magistrate ordered withheld from discovery information that "could lead to the identification of an undercover officer" (at 14) as well as other information that "would make it easier to determine the identities of undercover officers or informants" (at 16-17 n.16). In his orders in this case, however, the Magistrate has left unexplained (and plaintiffs have offered no help explaining) why the visual information contained in Badge 6216's *physical appearance* is not information that "could lead to the

3

identification of" Badge 6216 or that "would make it easier to determine" the identity of Badge 6216.

Plaintiffs have not offered any testimony to rebut the testimony offered by the NYPD's Commissioner Cohen and Chief Graham. Indeed, after quoting both Chief Graham and Commissioner Cohen extensively in their opposition papers, defendants note that plaintiffs do not so much as quibble with their testimony. See Letter of Jeffrey Fogel dated August 27, 2007 at 2-4. Plaintiffs also do not contest that, as a matter of law, the Magistrate was required to defer to the expertise of the Commissioner with respect to the handling of the NYPD's undercover officers (and Badge 6216 in particular). Nor do plaintiffs contest that, as a practical matter, the Magistrate's order substituted the Magistrate's own judgment for that of the Commissioner on this delicate issue.[1] See, e.g., MacWade v. Kelly, 460 F.3d 260, 273 (2nd Cir. 2006) ("we must remember not to wrest 'from politically accountable officials . . . the decision as to which among reasonable alternative law enforcement techniques should be employed to deal with a serious danger'"), quoting Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 453-54 (1990).

With respect to the law enforcement and intelligence judgment at issue in MacWade just last year, the Second Circuit emphasized that "[t]hat decision is best left to those with "a unique understanding of, and responsibility for, limited public resources, including a finite number of police officers." Id. Relying upon Supreme Court precedent, that court noted that "[c]ounter-terrorism experts and politically accountable officials have undertaken the delicate and esoteric task of deciding how best to marshal their available resources in light of the

---

[1] Defendants note that the Graham and Cohen affidavits, with the exception of Cohen's August 21, 2007 supplemental affidavit, were before Judge Francis in the cases of Schiller, Dinler and MacNamara at the time that Judge Francis issued his orders in this case; and plaintiffs have had notice of all of that testimony since it was filed with the Magistrate months ago in these cases, all of which have been consolidated for discovery purposes with this case.

4

conditions prevailing on any given day. We will not – and may not – second guess the minutiae of their considered decisions." Id., *citing* Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 453 (1990).

Defendants emphasize that plaintiffs' counsel conspicuously have refrained from providing any assurances that they will not disclose information concerning the physical appearance of Badge 6216 – nor even that they will not later seek to challenge the confidentiality of that information under Protective Order #1. Defendants respectfully remind the Court that defendants engaged in extensive and difficult negotiations, at Your Honor's direction, that led to the entry of Protective Order #1 in all of the RNC cases by stipulation of all parties. After defendants had designated information as "Confidential" pursuant to that stipulated order, however, plaintiffs in several of the related consolidated RNC cases challenged many of those designations. For all intents and purposes, the Magistrate has not enforced that stipulated order.

Plaintiff's own statements offer no greater comfort to defendants. As we noted in our Appeal Brief, Mr. Fogel has stated only that "I am prepared to maintain, *at least for now*, the confidentiality of the officer's appearance." Plaintiff's Letter of July 9, 2007 at 2, ¶ 2. In his letter of July 11, 2007, Mr. Moore insisted that defendants produce Badge 6216 "without any disguise *and* be ordered to divulge his full name." Mr. Moore has offered only "to keep this deposition transcript confidential until such times as its use is required in response to a motion or at trial." Moore Letter at 2, ¶ 2. Both letters are attached as Exhibit "I" to the Appeal Brief. In their oppositions to defendants' Appeal Brief, where both counsel might have assured the Court

directly that they would maintain as confidential all of the information about the physical appearance of Badge 6216, they have offered *no* such assurance.[2]

As in MacWade and Morrissey, moreover, plaintiffs have absolutely no need for the information sought here. *See* MacWade v. City of New York, 230 F.R.D. 379, 382-83 (S.D.N.Y. 2005) (holding that "courts must carefully weigh defendants' interest in non-disclosure 'against [plaintiffs'] need for information'" and refusing disclosure of law enforcement information); Morrissey v. City of New York, 171 F.R.D. 85, 91 (S.D.N.Y. 1997) (refusing disclosure of law enforcement information). Defendants emphasize the *narrowness* of the protection that they seek. Defendants have agreed to produce this officer for deposition in this case – and they have offered to do so with the minimal disguise of a wig and mustache. Contrary to plaintiffs' sweeping assertions, there will be no "disruption" of this deposition and there is no issue here about whether the plaintiffs' counsel will be able to "see" the witness. Plaintiffs' counsel will be permitted to *see* the witness including his face, his eyes, his posture and his movements for up to seven hours. The only information that defendants seek to protect by this appeal is that information concerning the appearance of Badge 6216 that lies directly beneath his wig and mustache. The Magistrate's orders allude to absolutely no need of counsel for that information; and plaintiffs themselves have failed to articulate any such need. The Magistrate has cited no case that could support such a need; and plaintiffs similarly have cited no

---

[2] In his opposition, Mr. Fogel argues for the first time that "a sloppy redaction revealed the identity of 6216 to counsel months ago" (at 4). Even if this were true, it would not justify stripping Badge 6216 of legal protections to which he is entitled as an undercover officer. In any event, Mr. Fogel's suspicion is nothing more than that – mere suspicion. Plaintiff has not shared the supposed name of this officer with defendants – and defendants never have confirmed it and never would confirm it. Nor should the Court give its imprimatur to Mr. Fogel to toy with the life and livelihood of this officer and his family, as Mr. Fogel implicitly requests, on the basis of a purported "sloppy redaction" by counsel.

such case. On this record, plaintiffs have shown no need, much less the "substantial" need required by law, to overcome the law enforcement privilege.[3]

In short, plaintiffs cite to no legal authority at all that supports either the Magistrate's orders or plaintiffs' flimsy arguments. In fact, both cases cited by Mr. Fogel directly support defendants' argument that a disguise is permissible in the Second Circuit. In Morales v. Artuz, 281 F.3d 55, 62 (2d Cir. 2002) (Newman, J.), in the context of a habeas petition after a criminal trial where the accused had the benefit of the Sixth Amendment's right to "confront" his or her accuser (a provision of the Constitution that provides no benefit to plaintiff Banno in this lawsuit for money damages), a key witness against the accused was permitted to don the "minimal disguise" of dark sunglasses. According to the Second Circuit, "we doubt that permitting [the witness] to testify behind dark sunglasses was contrary to constitutional law." Id. at 62.

In Morales, the Second Circuit identified the various rationales that support the Supreme Court's Confrontation Clause holdings. The "main and essential purpose of confrontation is to secure for the opponent the opportunity for cross-examination." 281 F.3d at 59-60. Other purposes are to permit the defendant to face his or her accuser; and to permit the jury to see the witness's eyes in order to consider the witness's demeanor and assess his or her credibility. Id. Even assuming that plaintiff Banno could benefit from the Confrontation Clause in this civil action, the Second Circuit's reasoning plainly dictates that the minimal disguise sought by defendants here is permissible. That is because this disguise would not interfere with

---

[3] Defendants remind the Court that, at the time of the deposition of another undercover officer in this action, plaintiff had no objection to an even greater disguise than we have proposed for Badge 6216. Plaintiff took that undercover officer's deposition while he wore sunglasses, a wig and mustache, without objection from any of the three plaintiffs' counsel who attended that deposition (see Letter of James Mirro to Magistrate Francis dated July 27, 2007, Exhibit "B" to Appeal Brief).

7

*any* of these articulated concerns. Even with Badge 6216's use of a wig and mustache, plaintiffs will be permitted a full opportunity to examine him under oath. Since this is not a criminal matter and Banno has no "accuser," he need not "face his accuser" but, in any event, his counsel will face Badge 6216. And, as his discovery deposition is not a trial, there will be no jury "to see the witness's eyes" but, in any event, his counsel will see Badge 6216's eyes and demeanor so he may assess the undercover's credibility.

In Morales, moreover, the Court emphasized that there are other means of assessing a witness's credibility. The court noted that, even with the dark sunglasses, "the jurors had an entirely unimpaired opportunity to assess the delivery of Sanchez's testimony, notice any evident nervousness, and observe her body language." Id. at 61. "Most important, they had a full opportunity to combine these fully observable aspects of demeanor with their consideration of the substance of her testimony, assessing her opportunity to observe, the consistency of her account, any hostile motive, and all the other traditional bases for evaluating testimony." Id. "All that was lacking was the jury's ability to discern whatever might have been indicated by the movement of her eyes." Id. In this case, even with the wig and mustache, plaintiffs will have all of these indicia of Badge 6216's credibility.

Nothing in the Second Circuit's earlier case of Ayala v. Speckard, 131 F.3d 62 (2d Cir. 1997) is to the contrary. Indeed, in that case, on rehearing *en banc* of three appeals from habeas petitions after criminal trials, the Court held that the trial courts in each case were justified to close the courtroom for purposes of protecting the identity of undercover officers notwithstanding defendants' First and Sixth Amendment rights. According to the Court *en banc,* "The state interest in maintaining the continued effectiveness of an undercover officer is an extremely substantial interest, and the trial judge in each case was amply justified in concluding that this interest would be seriously prejudiced by requiring the officer to testify in an open

8

courtroom." Id. at 72. Contrary to plaintiffs' disingenuous argument in this case, moreover, "[t]here is no requirement that the prosecution must prove that particular individuals likely to attend the trial will disclose the officer's identity." Id.

Accordingly, the Court *en banc* held that "[t]he gravity of the state interest in protecting the secrecy of the officer's identity . . . and the likelihood that this interest will be prejudiced by the officer's testifying in open court are both sufficiently substantial to justify the limited closure of the courtroom during the officer's testimony." Id. The Court had no need to reach the far more weighty concern of the officers' safety. "Since the state interest in maintaining the secrecy of the undercover officer's identity warranted the limited closure, we need not consider the respondents' additional point that the closure was also justified by the risk to the officer's safety." Id.

The Second Circuit held that the district judge is not obligated *sua sponte* to consider alternatives to closure such as a disguise. "Disguising the witness risks lessening *the jury's* opportunity to observe the witness's demeanor and assess credibility." Id. at 71-72. The Court added that, "Of course, if some further alternative [such as disguise] is suggested by the defendant or the prosecution, the trial judge should give it consideration." Id. at 72. Judge Parker, writing in dissent in that particular opinion, observed that "numerous alternatives to closure existed [including that] the court could have limited access to the courtroom; a screen could have been erected between the undercover officer and the audience [and] the officer could have worn a disguise." Id. at 77-78.

Nothing in Vodak v. City of Chicago, 2004 WL 2032147 (N.D. Ill. 2004), which is an Illinois opinion by Magistrate Nolan, is contrary to the existing Second Circuit authority. Indeed, in that case, the Court held that "[d]efendants have a valid interest in preserving the anonymity of undercover intelligence officers" and that "[t]he effectiveness and safety of

9

undercover officers may be compromised if their identities are disclosed." Id. at *5. Magistrate Nolan permitted the defendants to withhold from discovery both "the names of all undercover intelligence officers as well as any identifying information" about them. Id.

In short, even if plaintiff in this case had the benefit of any right under the Confrontation Clause, the Second Circuit would permit appropriate protections to genuinely shield the identity of the undercover officer. In this civil case, of course, plaintiff does not have the benefit of any right under the Confrontation Clause. Nor has plaintiff cited to any other legal authority that supports the Magistrate's orders or plaintiffs' arguments. Accordingly, for purposes of the pre-trial discovery deposition in this case, where there may never be any trial, and where the identity of the officer is protected by the law enforcement privilege, defendants submit that Badge 6216 should be permitted the use of a disguise to shield his identity at deposition. The Magistrate's orders to the contrary are clearly erroneous and contrary to law for all of the foregoing reasons and should be reversed.

## CONCLUSION

For all of the foregoing reasons, defendants respectfully request that the Court reverse the Magistrate's orders and enter an order permitting Undercover Badge 6216 to provide his deposition testimony in disguise.

Dated: New York, New York
      September 5, 2007

                              Respectfully submitted,

                MICHAEL A. CARDOZO
                Corporation Counsel of the City of New York
                Attorneys for Defendants
                100 Church Street, Room 3-130
                New York, New York 10007
                212.788.8026 (ph)

By:          _____
                James Mirro (JM 2265)
                Special Assistant Corporation Counsel
                Special Federal Litigation Division