UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2-25-15
```

YUSUKE BANNO,

                    Plaintiff,

-v-

CITY OF NEW YORK, *et al.*,

                    Defendants.

No. 06-cv-2270 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

    Plaintiff Yusuke Banno ("Plaintiff") brings this action against the City of New York (the "City"), NYPD Officer John Park ("Park"), and John Doe NYPD Undercover Badge 6216[1] ("UC," and, collectively with Park, the "Individual Defendants"), alleging claims for false arrest and malicious prosecution under 42 U.S.C. § 1983 and New York State law. (Doc No. 1 ("Compl.").) Now before the Court is Defendants' motion for summary judgment as to the entirety of the Complaint. For the reasons set forth below, Defendants' motion is granted in part and denied in part.

I. BACKGROUND

A. Facts[2]

    This action arises out of events leading up to the 2004 Republican National Convention (the "Convention"), which was held in New York City between August 30 and September 2, 2004.

---

[1] Although the Complaint and case caption name "John Doe," it is undisputed that John Doe is actually UC. (*See* Doc. No. 112 at 1.)

[2] The following facts are drawn from Defendant's Local Civil Rule 56.1 Statement and Plaintiff's Rule 56.1 Counter-Statement. (Doc. No. 111 ("Def. 56.1 Stmt."); Doc. No. 113 ("Pl. 56.1 Counter-Stmt.").) Plaintiff failed to comply with Rule 56.1, in that the counter-statement does not include a correspondingly numbered paragraph "responding to *each numbered paragraph* in the statement of the moving party," and responds with paragraphs that correspond to only 47 of the 194 paragraphs in Defendants' Rule 56.1 Statement. Plaintiff's Counter-Statement indicates that it is

(Def. 56.1 Stmt. ¶ 1.) The Convention drew hundreds of thousands of visitors to New York, and resulted in large-scale demonstrations by protestors, and, ultimately, mass arrests of protesters by members of the NYPD. (*Id.* ¶ 9.) Among those demonstrations was a parade held by United for Peace and Justice (the "Parade") on August 29, 2004. (*Id.* ¶ 9.) Relevant to the instant action, the Parade was marred by the torching of a papier-mache dragon float – approximately 10 feet tall and 10 feet wide, with a 20–30 foot tail – which was set ablaze in a large fire sometime before 4:00 p.m. on Seventh Avenue between 33rd Street and 34th Street in Manhattan. (*Id.* ¶¶ 9, 30.) The fire ultimately led to Plaintiff's arrest. (*Id.*)

The events leading up to and following the fire are disputed. At the time of the fire, Officer Park was approximately five to ten feet from the dragon float. (*Id.* ¶ 67.) He observed at least ten people involved in lighting the fire. (*Id.* ¶ 69.) According to Park's deposition testimony, when the fire started, Park attempted to move toward it, but encountered people blocking him in an apparent effort to stop him from getting closer to the fire (*id.* ¶¶ 71–72, 75); he testified that Plaintiff was one of these people (*id.* ¶ 79). Subsequently, according to Park, the group of people that included Plaintiff engaged in a struggle with Park, after which everyone but Plaintiff and Park fled the scene. (*Id.* ¶¶ 82–88.) Park then put handcuffs on Plaintiff and took him to Sixth Avenue, then summoned his supervisor. (*Id.* ¶¶ 88, 90.) At that time, Park's supervisor saw that Park was injured, and ordered Park to leave Plaintiff in another officer's custody and to seek medical attention. (*Id.* ¶ 94.) Police Officer Orlando Rivera ("Rivera") then took custody of Plaintiff, near

---

only in response "to those facts which are disputed and arguably material to the issues." (Pl. 56.1 Counter-Stmt.) Accordingly, the Court deems all paragraphs from Defendants' Rule 56.1 Statement that do not have a correspondingly numbered paragraph in Plaintiff's Rule 56.1 Counter-Statement to be undisputed. Additionally, unless otherwise noted, the facts are undisputed, the objecting party has offered no admissible evidence to refute that fact, or the objecting party merely objects to inferences drawn from that fact. In deciding the motions, the Court also considered Defendants' memorandum of law in support of their motion (Doc. No. 112), Plaintiff's memorandum of law in opposition to Defendants' motion (Doc. No. 114 ("Opp'n")), and Defendants' reply (Doc. No. 119), along with the affidavits, declarations, and exhibits attached thereto.

34th Street and Sixth Avenue, and processed the arrest after being told by his supervisors what Plaintiff was alleged to have done. (*Id.* 102–05.) Rivera also spoke with Park at that time. (*Id.* ¶ 115.)

UC was also in the vicinity of the dragon at the time of the fire, and called the RNC Fusion Center to report his observations pertaining to the fire. (Def. 56.1 Stmt. ¶¶ 31, 37; Pl. Counter-Stmt. ¶¶ 31, 37.) UC asserts that he observed people trying to light the dragon on fire, and that one of the people he saw holding matches and attempting to light the dragon was Plaintiff. (Def. 56.1 Stmt. ¶¶ 32–35.) Later, when Plaintiff was at Sixth Avenue in Rivera's custody, UC identified Plaintiff to Rivera as one of the people who started the fire (*id.* ¶ 40), an identification Rivera referenced in Plaintiff's arrest paperwork (*id.* ¶ 117–120). For his part, Plaintiff disputes some of the deposition testimony of Park and UC, asserting that he did not participate in lighting the fire (Pl. Counter-Stmt. ¶¶ 32–33, 41), and never struggled with Park or attempted to block Park from getting to the fire (*id.* ¶¶ 72, 75, 77, 79, 82–85, 87, 88).

On September 2, 2004, Plaintiff was indicted by a grand jury on charges of assault, reckless endangerment, riot, and loitering. (*Id.* ¶ 18.) Rivera testified in front of the grand jury, and it is undisputed that he gave truthful answers to every question. (*Id.* ¶ 123.) However, Plaintiff has not unsealed the minutes of the grand jury proceeding, and there is no evidence in the record as to what other evidence the government presented to the grand jury. (*Id.* ¶ 126.) Subsequently, on May 17, 2006, the charges against Plaintiff were dismissed by the New York County District Attorney's Office. (*Id.* ¶ 21.)

B. Procedural History

On March 23, 2006, Plaintiff commenced this action against Defendants by filing the Complaint, alleging a federal false arrest claim against the Individual Defendants,[3] a federal malicious prosecution claim against the Individual Defendants, a First Amendment § 1983 claim against the Individual Defendants, and a New York State law claim for malicious prosecution against all Defendants. (Compl.)[4] On May 30, 2014, Defendants filed the instant motion for summary judgment (Doc. No. 108), which was fully briefed following Defendants' reply on July 21, 2014 (Doc. No. 119).

Defendants assert that the Individual Defendants had probable cause to arrest Plaintiff, such that the false arrest claim must fail; that the grand jury indictment created a presumption of probable cause that Plaintiff cannot rebut, which is fatal to the malicious prosecution claim; that Plaintiff has not offered any evidence that Defendants were motivated by Plaintiff's exercise of free speech, as is required for a First Amendment retaliation claim; and that Plaintiff failed to comply with N. Y. Gen. Mun. Law § 50-h, such that Plaintiff's state law malicious prosecution claim cannot lie against the City. Defendants also move for summary judgment on grounds of qualified immunity, asserting that even if probable cause was lacking, the Individual Defendants had "arguable probable cause."

---

[3] Plaintiff originally also named Police Officer Orlando Rivera as a Defendant, but has since dismissed all claims against him. (*See* Opp'n at 13.)

[4] This is one of the 90 actions filed in this District stemming from mass arrests and detentions at the 2004 Republican National Convention, raising claims of, *inter alia*, false arrest, malicious prosecution, unreasonable and unhealthy terms of confinement, and unlawful fingerprinting and detention policies. The cases were consolidated and referred to Judge Francis for discovery, and assigned to my docket on October 2, 2007. In the decade since these actions were filed, the vast majority have settled; the instant action is the only remaining 2004 RNC-related case in which there has not yet been a determination as to liability.

## II. LEGAL STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, a district court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact. A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party "'show[s]' – that is,

5

point[s] out . . . – that there is an absence of evidence [in the record] to support the nonmoving party's [position]," *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

### III. DISCUSSION

Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983. To prevail on a claim under § 1983, a plaintiff must show (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, (2) by a person acting under the color of state law. *See id.*; *see also Duamutef v. Morris*, 956 F. Supp. 1112, 1115 (S.D.N.Y. 1997) ("Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." (internal quotation marks omitted)). Here, Plaintiff alleges that Park and UC, in violation of § 1983, falsely arrested him and then made knowingly false allegations to cover up their own unlawful conduct, constituting malicious prosecution under § 1983 and state law.[5] The Court thus turns to Plaintiff's claims and analyzes each separately.

#### A. False Arrest

The elements of a claim of false arrest under § 1983 "are substantially the same as the elements of a false arrest claim under New York law." *Maron v. Cnty. of Albany*, 166 F. App'x 540, 541 (2d Cir. 2006). "To state a claim for false arrest under New York law, a plaintiff must show that: (1) the defendant intentionally confined the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise justified." *Little v. City of New York*, 487 F. Supp. 2d 426, 438 (S.D.N.Y. 2007).

---

[5] Plaintiff indicated in his opposition brief that he is no longer pursuing the First Amendment retaliation claim. (*See* Opp'n at 10 n.11.) Accordingly, the First Amendment retaliation claim is dismissed.

6

Probable cause is a complete defense to a false arrest claim. *Id.* "Probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Maron*, 166 F. App'x at 541–42 (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers . . . or may require a trial if the facts are in dispute." *Id.*

Here, UC testified that he saw Plaintiff participate in lighting the dragon on fire, and Park testified that he believed Plaintiff was involved in the fire and further that Plaintiff obstructed Park's investigation. If the testimony of UC and Park were the only evidence in the record, the Court would have little difficulty finding that the officers had probable cause to arrest Plaintiff, and that a claim for false arrest cannot lie. However, Plaintiff submitted a declaration declaring under penalty of perjury that he did not participate in lighting the dragon, and that he did not know it was going to happen or who did it. (*See* Declaration of Yusuke Banno dated June 25, 2014, Doc. No. 115, ¶ 7.) He further declared that he did not block Park and was, in fact, stepping onto the sidewalk when Park arrested him. (*Id.* ¶ 8.) Whether Plaintiff was involved in lighting the fire and obstructing Park are thus disputed issues of fact, and if Plaintiff's testimony is believed, a jury could reasonably find that Defendants had no probable cause to arrest him. Thus, summary judgment cannot be granted on grounds of probable cause.

Defendants next argue that even if the Court cannot conclude as a matter of law that the Individual Defendants had probable cause, they are nonetheless entitled to qualified immunity because they had "arguable probable cause" to arrest Plaintiff. *See Prevost v. City of New York*,

No. 13-cv-3760 (VEC), 2014 WL 6907560, at *3 (S.D.N.Y. Dec. 9, 2014) ("Even if an arrest is made without probable cause, a police officer is entitled to qualified immunity if she can establish that she had 'arguable probable cause' to arrest the plaintiff."). Arguable probable cause exists "when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well-established law." *Diop*, 2014 WL 4958623, at *7 (S.D.N.Y. Aug. 21, 2014) (emphasis in original).

Contrary to Defendants' assertions, however, if the jurors believe the Plaintiff's version of events as set forth in his declaration, they could reasonably find facts establishing that the Individual Defendants had no "arguable probable cause." Indeed, the only evidence offered by Defendants as to the existence of probable cause stems from the identifications by the Individual Defendants of Plaintiff as having engaged in criminal conduct. Plaintiff has raised a dispute as to whether the Individual Defendants *could* have identified him as having participated in lighting the fire or obstructing Park – insofar as he disputes having done those things in the first place – and the existence of "arguable probable cause" depends on the jury's resolution of the dispute. Additionally, Plaintiff has adduced evidence that a reasonable jury could find undermines the existence of probable cause or "arguable probable cause," including evidence that a jury could use to call into question the proximity of UC to the fire, the veracity of Park's version of the events, and the legitimacy of UC's identification of Plaintiff. Accordingly, summary judgment is denied as to Plaintiff's false arrest claims against Park and UC.

### B. Malicious Prosecution

For Plaintiff to prevail on his § 1983 malicious prosecution claim, he "must establish the elements of malicious prosecution under state law, and then show that his Fourth Amendment rights were violated after legal proceedings were initiated." *Little*, 487 F. Supp. 2d at 440. "To

8

establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (citation and internal quotation marks omitted). "The existence of probable cause is a complete defense to a claim of malicious prosecution." *Id*. "The determination of probable cause in the context of malicious prosecution is essentially the same as for false arrest, except that a claim for malicious prosecution must be evaluated in light of the facts known or believed at the time the prosecution is initiated, rather than at the time of arrest." *Gaston v. City of New York*, 851 F. Supp. 2d 780, 793 (S.D.N.Y. 2012). A grand jury indictment creates a presumption of probable cause, *see, e.g., Fulton v. Robinson*, 289 F.3d 188, 198 (2d Cir. 2002), which "may be rebutted only by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Manganiello*, 612 F.3d at 162.

Here, the grand jury indictment is fatal to Plaintiff's malicious prosecution claim. Plaintiff has offered no evidence to rebut the presumption of probable cause raised by the indictment, and merely asserts that for the same reason there is a question of fact as to probable cause for the false arrest claim, there is a question of fact as to probable cause for the malicious prosecution claim. Specifically, Plaintiff argues that "[i]f the jury found [Plaintiff] more credible than Officer Park, it could readily conclude that Officer Park did give false information, which would overcome the presumption." (Opp'n at 21.) However, Plaintiff did not unseal the minutes of the grand jury proceeding, and has otherwise offered no evidence as to what was actually presented to the grand jury aside from the admittedly truthful testimony of Rivera. (*See* Def. 56.1 Stmt. ¶¶ 123, 126

9

(undisputed).) Because "[t]here is nothing in the record indicating what evidence was presented to the grand jury, let alone that any of it was fraudulent, fabricated or otherwise the product of bad-faith conduct. . . . [Defendant] has not rebutted the presumption of probable cause." *Williams v. City of New York*, No. 10-cv-2676 (JG) (LB), 2012 WL 511533, at *3 (E.D.N.Y. Feb. 15, 2012); *see also Rothstein v. Carriere*, 373 F.3d 275, 284 (2d Cir. 2004) (reversing district court and finding probable cause not rebutted where defendant – who had allegedly made false statements to law enforcement authorities, leading to plaintiff's arrest – testified at grand jury proceedings, but contents of his testimony and of remainder of government's presentation was unknown); *cf. Frederick v. New York City*, No. 11-cv-469 (JPO), 2012 WL 4947806, at *9 (S.D.N.Y. Oct. 11, 2012) (analyzing showing required to overcome presumption of probable cause in context of motion to unseal grand jury minutes). Accordingly, Defendant's motion for summary judgment as to Plaintiff's § 1983 malicious prosecution claim is granted.

For the same reasons, in light of the unrebutted presumption of probable cause raised by the grand jury indictment, summary judgment must be granted for the Individual Defendants as to the claims for state law malicious prosecution as well. Likewise, any claim against the City premised on theories of *respondeat superior* – available under state law, unlike in the § 1983 context, *see L.B. v. Town of Chester*, 232 F. Supp. 2d 227, 239 (S.D.N.Y. 2002) – must also be dismissed, because Plaintiff has not established the liability of a New York City employee.[6]

---

[6] In his opposition brief, Plaintiff also makes an offhand reference – with no citation to the record – to "undisputed evidence that ranking officials in the New York City Police Department knew who was going to torch the dragon and when and where it would happen," and that because this information was withheld and the person with such knowledge didn't have the opportunity to exonerate Plaintiff, the City is liable for malicious prosecution. (Opp'n at 22.) This bald, unsupported assertion does not create a material dispute of fact, and the Court declines to deny summary judgment for the City on this basis.

IV. CONCLUSION

Accordingly, IT IS HEREBY ORDERED THAT Defendant's motion for summary judgment is DENIED as to Plaintiff's claims for false arrest as against Park and UC and GRANTED as to Plaintiff's claims for malicious prosecution under § 1983 and New York State law. IT IS FURTHER ORDERED THAT Plaintiff's claims against Rivera and against all Defendants for First Amendment retaliation are DISMISSED. The Clerk of the Court is respectfully directed to terminate the motion pending at docket entry number 108.

SO ORDERED.

Dated:  February 25, 2015
         New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE